## THE TERRITORY OF NEW MEXICO, Appellee, v. CATARINO GONZALES, Appellant.

[No. 904.   April 25, 1902.]

### SYLLABUS.

1.   Under section 2881, Laws of 1897 and rule 9 of this court, the court may, in its discretion, require defendant to produce in court the supporting witnesses to his application for a change of venue, to be examined orally under oath as to their knowledge and interest.

2.   Where such examination shows such witnesses to be incompetent, it is not error to deny the application.

3.   Where there is evidence for the prosecution, which if true, sustains a verdict of guilty, the verdict will not be disturbed on appeal.

4.   The word "can" is properly used in an instruction informing the jury that although the indictment was for murder in the first degree they could find the defendant guilty of the lesser degrees, or not guilty as the evidence warranted.

5.   It is not error for the court to instruct the jury that it is their duty to return a verdict, and that it is also their duty to harmonize the evidence, if they can do so.

6. If, in the instructions of the court, the jury are fully informed as to the law of justifiable or excusable homicide, the same need not be repeated in paragraphs referring to the different degrees of murder.

7. Where there is evidence tending to show that the defendant was the aggressor and brought on the encounter in which the deceased, being unarmed, was shot and killed, and where the defendant pleaded self-defense; it is not error for the court to charge the jury "that a person charged with the murder of another cannot avail himself of the claim of necessary self-defense, if the necessity for such defense was brought on by his own deliberate wrongful act."

8. Where counsel are of opinion that the court's instructions do not fully cover the issues in the case, it is the duty of counsel to submit proper instructions covering omissions claimed in the trial court; and if counsel fail to do so, he is not in position to assign error upon such grounds in this court.

9. Where objection is made that the court's charge does not fully cover the issues of self-defense, but the record shows that the court gave the instructions prepared by defendant's counsel fully covering all defects claimed. *Held,* no error.

10. It is not error, for the court to refer to the defendant, in an instruction as to the credibility of witnesses, if such instruction is otherwise proper.

Appeal from the district court of San Miguel county, before WILLIAM J. MILLS, Chief Justice. Affirmed.

O. A. LARRAZOLO for appellant.

The statute governing the matter of change of venue in this cause is section 2881, Compiled Laws of New Mexico 1891. This statute is mandatory.

Territory v. Kelly, 2 N. M. 292; Sutherland on St. Const., secs. 454 and 459; State v. Shaw, 43 Ohio 324; Witter v. Taylor, 7 Ind. 110; Shattuck v. Meyers, 13 Ind. 46, 74 Am. Dec. 236; Shoemaker v. Smith, 74 Ind. 71; Herbert v. Beathard, 26 Kas. 746; Alberton v. Eldridge, 56 Iowa 709, 10 N. W. 252; Knickerbocker Ins. Co. v. Talman et al., 80 Ill. 106; Cor-

penny v. Sedalia, 57 Mo. 88; Clark v. People, 2 Ill. 117; People v. Yoakum, 53 Cal. 566; 3 Am. and Eng. Ency. of Law, 91.

And not even a rule of court can impair this right. Shoemaker v. Smith, supra.

The averments of the affidavit are conclusive upon the court if they meet the demands of the statute.

Taylor v. Gardner, 11 R. I. 182.

As bearing upon the same question—

Taylor v. Leary (N. M.), 43 Pac. 688; Wakefield v. State, 41 Tex. 553.

It is quite immaterial as a legal proposition that the deceased and those acting with him were or were not in a position, and had or had not the ability to then and there do the defendant great personal injury; but it was sufficient that it reasonably *appeared to the defendant* that they were in a position and had the ability to then and there do him serious bodily injury, even though as a matter of fact such was not the case. The actual or apparent danger and the sufficiency thereof is to be considered and measured from the standpoint of the defendant at the time of the homicide, and not from the standpoint of the jury in the light of the facts proved.

9 Am. and Eng. Ency. Law, 596 and note; Pond v. People, 8 Mich. 150; Logur v. Com., 38 Pa. St. 265; 80 Am. Dec. 481; Com. v. Cary, 2 Brewst. (Pa.) 404; Marmoch v. State, 7 Tex. App. 269; Patello v. State, 22 Tex. App. 586; Bell v. State, 20 Tex. App. 455; 1 Whart. Crim. Law (8 Ed.), secs. 488 to 491 and note 1, p. 451.

"Any misdirection by the court trying the case, in point of law, on matters material to the issue, is a good ground for a new trial."

Whar. Crim. Pl. and Pr. (9 Ed.), sec. 793; People v. Cogdell, 1 Hill (N. Y.) 95; People v. Thomas, 3 Hill (N. Y.) 169; People v. Bodine, 1 Denio 282; Com. v. Parr, 5 Watts and S. 345;

McDonald v. State, 63 Ind. 544; State v. Meshek, 51 Iowa 308; Maddox v. State, 12 Tex. App. 429.

"And such misdirection, even upon one point, is sufficient, although the jury might have properly found their verdict upon another point, as to which there was no misdirection."

Wharton's Crim. P. and Prac. (9 Ed.), sec. 793; State v. McCluer, 5 Nev. 132; People v. Bodine, 1 Denio 280; Harris v. State, 47 Miss. 318; Ballew v. State, 36 Tex. 98; Parnell v. Com., 86 Penn. St. 260.

Material error in one instruction calculated to mislead, is not cured by a subsequent contradictory instruction.

Clem v. State, 31 Ind. 480; Stowell v. State, 61 Iowa 535; Howard v. State, 50 Ind. 190.

Unless the prior erroneous instruction be expressly recalled.

State v. Morris, 47 Conn. 546; State v. Williams, 69 Mo. 110.

The defendant in a criminal prosecution is only required to make out his defense by raising through the evidence a reasonable doubt of his guilt.

Whar. Crim. Ev. (8 Ed.), sec. 331; U. S. v. Hayward, 2 Gall. 485; State v. Crowell, 25 Me. 171; Sheldon v. Clark, 1 Johns. 513; State v. Morrison, 3 Dev. 299; Gening v. State, 1 McCord 573; Farrel v. State, 32 Ala. 557; Wheat v. State, 6 Mo. 455; State v. Lipscomb, 52 Mo. 32; Black v. State, 1 Tex. App. 368; Hopper v. State, 19 Ark. 143; People v. Schryver, 42 N. Y. 1; Stokes v. People, 53 N. Y. 164; Silons v. State, 22 O. St. 90; Weaver v. State, 24 O. St. 584; 2 Benn. and Head's Lead. Cases, 504.

The defendant has a right to a full statement of the law suited to the conditions of his case from the Judge; and a neglect to give such statement when the jury, con-

sequently fall into error, is sufficient reason for a re-versal.

Whar. Crim. P. and Prac. (9 Ed.), sec.
709; State v. M'Donnell, 32 Vt. 491; People
v. Rego, 43 Hun 127; Longnecker v. State, 22
Ind. 247; State v. Braintree, 25 Iowa 572;
State v. Meshek, 51 Iowa 308; People v. Dunn,
1 Idaho 75; Lancaster v. State, 3 Colo. 339;
Souey v. State, 13 Lea 472; State v. Hendricks,
32 Kas. 559; Hinch v. State, 25 Ga. 699; Cox
v. State, 32 Ga. 515; Aaron v. State, 39 Ala.
684; Woodbury v. State, 69 Ala. 12; State v.
Daubert, 42 Mo. 242; State v. Mitchell, 64 Mo.
191; Bell v. State, 17 Tex. App. 538; Whulis
v. State, 32 Tex. App. 238.

If in provoking and bringing about the affray, the
defendant did not intend to kill, or commit any other
felony, and his adversary returned it by violence be-
yond what was proportionate to the aggression, the
character of the combat changed; and if without time
for his passion to cool, or if as the only possible means
of repelling such violence, and freeing himself from ap-
parent impending danger of death or serious personal
injury, he killed the deceased, such killing would only
be manslaughter, or under our statute, murder in the
third degree, which does not imply malice.

State v. Partlow, 90 Mo. 608; Whar. on
Homicide, 197; 1 Whar. Crim. Law (8 Ed.),
secs. 474-476; 2 Bishop, Crim. Law, secs. 701-
702-715; State v. Lane, 4 Ired. 113; Reg. v.
Smith; 8 Car. and P. 160; Slaughter's Case,
11 Leigh (Va.) 681; Murphy v. State, 37 Ala.
142; Adams v. People, 47 Ill. 376; State v. Hil-
drette, 9 Ired. 429; State v. Hogue, 6 Jones'
Law (N. C.) 381; State v. Martin, 2 Ired. 101;
Atkins v. State, 16 Ark. 568; Cotton v. State,
31 Miss. 504; Stewart v. State, 1 O. St. 66;

State v. Hill, 4 Dev. and Bat. 491; Daniel v. State, 10 Lea (Tenn.) 261; Harrigan and Thompson's Cases on Self-Def., p. 227; Reed v. State, 11 Tex. App. 509; King v. State, 13 Tex. App. 277; State v. McDonell, 32 Vt. 491; 1 Hale P. C., 456; 6 How. St. Tr., 769.

The instruction at paragraph 19 of the charge is bad because it calls the attention of the jury directly to the evidence of the defendant, not only as a witness in the case, but pointedly as the defendant, and of necessity to his interest in the final result; hence to the probability of that evidence being biased and consequently to but little credit. Such an instruction is bad because it goes to the weight of the evidence.

Section 2994, C. L. N. M. 1897; 1 Thompson on Trials, secs. 218-219; Muely v. State, 18 S. W. (Texas) 411; Thomp. Trials, sec. 2421; Crutchfield v. Richmond and R. Co., 76 N. C. 320; Harell v. State (Tex. Cr. App.), 40 S. W. 799; State v. Tickel, 13 Nev. 502-508; Territory v. O'Donnel, 4 N. M. 66.

The law does not indulge any presumption against the defendant in a criminal prosecution.

Whar. Crim. P. and Prac. (9 Ed.), sec. 749; Hendricks v. State, 26 Ind. 493; State v. Bailey, 1 Wins. N. C. (No. 1) 137; State v. Whitney, 7 Ore. 386; Whar. Crim. Ev. (8 Ed.), sec. 707 et seq.

No presumption arises and none can be entertained against the defendant by reason of his failure to testify; but if he is tendered as a witness and does testify, the law on grounds of policy presumes that he is not only competent but credible.

Whar. Crim. Ev., sec. 358; Whar. Crim. Ev. (8 Ed.), sec. 429; State v. Swan, 68 Mo. 605.

See also State v. Webb (Idaho), 55 P. 892; Thomp., Trials, sec. 2421; Buckley v. State, 62 Miss. 705; People v. Harper (Mich.), 47 N. W. 221.

A special instruction commenting specially upon the weight that the jury should attach to the evidence of a defendant in a criminal case, tends to cast discredit and suspicion upon his evidence and is an unfair discrimination between him and the other witnesses.

> Whart. Crim. P. and P. (9 Ed.), section 711; Hoge v. People, 117 Ill. 35; People v. Lyons, 49 Miss. 107; Landrum v. State, 63 Miss. 107; Boyd v. State, 16 Lea 148; Murely v. State (Tex.), 18 S. W. 411; Whar. Crim. Ev. (8 Ed.), sec. 429; Greer v. State, 53 Ind. 420; Vatch v. State, 56 Ind. 584; Phoenix Ins. Co. v. La Pointe, 118 Ill. 384-389; Rice v. State, 3 Tex. App. 451-455; Thomp., Trials, sec. 2421; Hickory v. U. S., 160 U. S. 424, citing Allison v. U. S., 160 U. S. 203; Reynolds v. U. S., 98 U. S. 145-168; People v. Van Eman (Cal.), 43 Pac. 520.

An instruction to the jury "that in passing upon the testimony of the several witnesses they should reconcile all the different parts if possible," presumes a conflict in the evidence and goes to the weight of the evidence, and so invades the province of the jury.

> Houston Ry. v. Richards, 49 S. W. 687; Houston v. Richards, 47 S. W. 972; Anderson v. Hair, 44 S. W. 658; Thompson, Trials, secs. 2461-2462; Territory v. Lopez, 3 N. M. 105; Whar. Crim. Ev. (8 Ed.), secs. 330-331; Coffin v. U. S., 156 U. S. 432; State v. Clark, 72 N. W. 296; Brown v. State, 23 Tex. 202; State v. Mitchell, 35 S. E. 213.

And the court should have instructed the jury that in so harmonizing the evidence they should bear in mind that if the facts and circumstances in proof could be accounted for upon any reasonable hypothesis consistent

with the defendant's innocence, they should acquit the defendant.

Farley v. State (Ind.), 26 N. E. 898; People v. Gasset (Cal.), 29 Pac. 246; Lancaster v. State (Tenn.), 18 S. W. 777; Slade v. State (Tex.), 16 S. W. 253.

See also Whar. Crim. P. and P. (9 Ed.), sec. 709; Campbell v. People, 109 Ell. 565.

Where a motion for a new trial is founded on errors of the trial court in the conduct of the trial, a new trial is a matter of course unless it is apparent that the matters complained of did not and could not affect the verdict.

16 Am. and Eng. Ency. L., p. 512; Mirick v. Hemphill, 1 Hempst. (U. S.) 179; Morford v. Woodworth, 7 Ind. 83; Lewis v. State, 33 Ga. 131; People v. Scott, 6 Mich. 287; Horner v. Wood, 16 Barb. (N. Y.) 386; Hobbs v. Outlaw, 6 Jones L. (N. Car.) 174; Hook v. Craghead, 35 Mo. 380; Freeman v. Rankin, 21 Me. 446; Selleck v. Sugar H. Turnpike Co., 13 Conn. 453; McKay v. Leonard, 17 Iowa 569; Cross v. Hall, 4 Md. 426; Coit v. Waples, 1 Minn. 134; Means v. Means, 7 Rich. L. (S. Car.) 533; Newsberg v. Farmer, 1 Wash. 209; Myers v. Hollingsworth, 26 N. J. L. 186; McCall v. Seevers, 5 Ind. 187; Mitchell v. Churchman, 4 Humph. (Tenn.) 218; Olney v. Chadsey, 7 R. I. 224; Carlock v. Spencer, 7 Ark. 12; Eckert v. Cameron, 43 Pa. St. 120; Lively v. Ball, 2 B. Mon. (Ky.) 53; Musquis v. Blake, 24 Tex. 461; Union Water Co. v. Crary, 25 Cal. 504; Andrist v. Union Pac. R. Co., 30 Fed. 345; Pomeroy v. Taylor, Brayt. (Vt.) 169.

EDWARD L. BARTLETT, Solicitor-General, for appellee.

On a motion for a change of venue made under sections 2881-2884 of the Compiled Laws of 1897, the question as to whether the supporting witnesses are disinterested must be decided by the court alone.

Territory v. Leary, 8 N. M. 180.

Rule of court has same force and effect as the statute and should be considered and is an amendment to the statute.

Compiled Laws of 1897, secs. 874-879, 3146; Rogers v. Richards, 8 N. M. 666; R. G. Im. Co. v. Gildersleeve, 174 U. S. 608; Thompson v. Hatch, 3 Pick. (Mass.) 512.

"If it appears there was evidence for the prosecution, which if true sustains a verdict of guilty, the verdict will not be disturbed on appeal."

Trujillo v. Territory, 7 N. M. 43-47; Territory v. Webb, 2 N. M. 148; Territory v. Maxwell, 2 N. M. 250; Hicks v. Territory, 6 N. M. 596;

It is not necessary that the deliberate intent to kill should have been formed for any specific length of time; it is enough that it exist at the moment of the killing, if it is deliberate.

Sackett on Instructions, pp. 685-694; 9 Am. & Eng. Ency. of Law, p. 543; Territory v. Baker, 4 N. M. 271; Territory v. Romine, 2 N. M. 130; 2 Thompson on Trials, secs. 2206 and 2209-10.

Malice, and presumptions thereof.

Aguilar v. Territory, 8 N. M. 496-504-505; Lucero v. Territory, 8 N. M. 553; Sackett on Instructions, pp. 675-678, sec. 6; 2 Thomp. on Trials, sec. 2208; State v. Cain, 20 W. Va. 679-709; 2 Gratt. (Va.) 595; Jackson v. People, 18 Ill. 270.

The law as to self-defense here applicable.

Thomp. on Trials, sec. 2160; Territory v.

Baker, 4 N. M. 266; Sackett on Instructions, p. 703 et seq., 704-5.

As to the weight that should be attached to the testimony of the defendant.

Faulkner v. Territory, 6 N. M. 485; Territory v. Romine, 2 N. M. 114; Sackett on Instructions, pp. 637-638.

The defendant cannot avail himself of the plea of self-defense if the necessity for such defense is brought about by his own wrongful act.

2 Thomp. on Trials, sec. 2167; State v. Vansandt, 80 Mo. 67-69; Kemp v. State, 13 Tex. App. 561; State v. Ferguson, 2 Hill (S. C.) 619; 1 Iredell Law (N. Car.) 113; Sackett on Instructions, p. 707; Adams v. People, 47 Ill. 376.

## STATEMENT OF THE CASE.

The appellant, Catarino Gonzales, was convicted of murder in the second degree, and sentenced to twenty years' confinement in the penitentiary from the twenty-third day of December, A. D. 1899, in the district court of the Fourth judicial district in and for the county of San Miguel. From this judgment and sentence the appellant appealed to this court.

The testimony in this case is quite voluminous and somewhat conflicting. Several witnesses testified in behalf of the Territory substantially to the following effect: That on the twenty-fourth day of June, A. D. 1898, which was Saint John's Day, a difficulty occurred between the appellant and the deceased, in which an ordinary fight took place in which the appellant was the aggressor, and the appellant getting the worst of it, made threats against the life of the deceased; that on the night of the sixteenth of July, following, the deceased gave a dance of which he was the manager and the guests were invited by him; that the appellant,

though uninvited, came to the dance; that he was armed with a revolver and did not disarm himself during the dance as required by law; that he entered the ballroom unmolested, and was invited to participate in the dancing by the deceased, and that he did so participate; that he acted in a surly and angry manner while in the dancehall; that he approached one of the guests who had not been assigned a place on the floor and endeavored to prejudice him against the deceased who was managing the dance by suggesting to him that he had been slighted by the manager, and that during the evening he had used vile language towards the deceased and invited him to come out of the ballroom, but that the deceased did not go, nor did he at any time during the evening show any ill feeling toward the appellant; that when the dance was over, the deceased started to leave the house going towards his mother-in-law's house with his wife on one side and Francisco Valencia on the other side. The appellant, who was standing to one side of the door, a short distance outside of the dance-hall, called to the deceased and said: "Come here, you son-of-a-bitch!"; that the deceased hearing this vile language addressed to him by the appellant, turned from his wife and Valencia and started back toward where the appellant was standing, and at the same time, the appellant started to go toward the deceased, and that before they reached each other, the distance being stated differently by different witnesses, the appellant fired three or four shots at the deceased. That when the first shots were fired, Alcario Valencia who was standing beside the deceased, grabbed the revolver with his hand, and that after he had taken hold of the revolver, one or two other shots were fired by the appellant. That Valencia and the appellant scuffled for the possession of the revolver, and Valencia finally obtained the revolver and delivered it to the officers. That several witnesses testified that the deceased was unarmed, and that there were no weapons of any kind in his hands when he was advancing toward the appellant;

that there was no fight between the deceased and the appellant; that the only struggle was between Valencia and the appellant, and this took place after the first shots had been fired, and in the struggle both the appellant and Valencia fell to the ground. That the deceased was taken to the residence of his mother-in-law, and two wounds were found upon his person, one in his body and another in his wrist, and from the physician's testimony and the other testimony of the Territory, the deceased died from the effects of the wounds inflicted by the appellant.

The testimony on behalf of the defense, as disclosed by the testimony of the appellant, is, that he was at the dance, and that he was invited to dance, but that he did not participate; that the reason he was armed was that he was going out to hunt some stock; and the reason he did not disarm was because the manager of the dance did not ask him for his revolver; that the deceased asked him to leave; denied that he invited the deceased out of the house, but testified that the deceased invited him out of the house to settle their former difficulty; that before the dance was over, he went over to a near-by saloon, and that as he was coming from the saloon the people were leaving the dance-hall, and as the deceased passed by where he was standing with his wife and Valencia on either side of him, he said to him: "Have you not gone away yet," and "I will make you go," or words to that effect; that the deceased came toward him and struck him, and that other parties who were with the deceased attached him, knocked him down and beat him very badly. He admitted that he fired one shot, and that he shot at the deceased. He said he heard other shots, but did not know who fired them. He claimed that he fired the shots because he was attacked by the deceased and other parties, and he was afraid they would do him bodily injury. He did not testify that he saw any weapons in the hands of the deceased, or that the deceased attempted to use any weapons upon him. He tes-

tified that a man by the name of Romualdo Ruiz was standing there, and called to the parties beating him to stop, that they would kill him, and that Ruiz lifted him up from the ground and took him away. Ruiz was afterwards put on the stand in rebuttal and positively denied all of the statements of the appellant in his testimony as to his making the statement claimed, or having seen any parties beating him, or helping to lift him up and take him away. One or two other witnesses claimed to have seen a fight, and that the deceased had struck the appellant first. In rebuttal certain testimony was given contradicting some of the statements of the witnesses for the appellant.

At the conclusion of the testimony, the arguments of the counsel and the instructions of the court, the jury returned a verdict in which they found the appellant guilty of murder in the second degree.

### OPINION OF THE COURT.

M'CFIE, J.—The first assignment is that the court erred in refusing to grant the appellant a change of venue. A motion for change of venue was made by counsel for the appellant in the court below, supported by an affidavit of the appellant, setting up substantially that the appellant could not have a fair trial, because of the prejudice of the inhabitants of the county of San Migual against him, and for that reason a fair and impartial jury could not be obtained in the county of San Miguel, and that the same objection existed as to the counties of Mora and Guadalupe. This affidavit was supported by two citizens of San Miguel county, Amador Ulibarri and Guadalupe Lopez. The court required the supporting witnesses to be examined under oath as to their knowledge and interest, so as to enable the court to determine the sufficiency of the affidavit. This examination disclosed the fact that the supporting witnesses knew noth-

ing about any prejudice existing against the appellant in either of the counties named. The sole reason given by them for making the affidavit was that there was a secret organization in the county called the Society of Jesus, and that it was a large society, as he was informed, and existed in a large part of San Miguel county, and that one of the members, Augustine Prada, had told him that the society was going to push the prosecution; that this was the only person who had said anything to him about the matter; that no one had said they were prejudiced against him; that he knew nothing about Mora and Guadalupe counties, and that Prada had not told him anything about these counties; that he understood this society also existed in these counties. This was substantially the testimony of Ulibarri. Lopez testified substantially that he had lived in Mora county six years before the time of the trial; that he had not lived there since the killing occurred; that he had not talked to any of the people of Mora county about the killing, nor with any of the people of Guadalupe county; that he did not know of any excitement existing in either of those counties by reason of the killing. Was asked if he found any of the people in Las Vegas who were prejudiced against the appellant, and he answered no; that he had not talked with any people who were prejudiced against Gonzales; that he had not found any people prejudiced against the appellant in any of the precincts that he had visited. All he knew was what he had been told at Pecos by some parties, and that the killing occurred in the neighborhood of Pecos, and that he never heard anything about it except there; that the deceased was a member of this society, and that he believed it was a large society, and that the deceased frequently asked him to unite with the society and intimated to him that the members of the society would stand by each other, and these were the only reasons given by the witness for his affidavit supporting the change of venue. After hearing the

testimony of these supporting witnesses, the court overruled the motion for change of venue.

The contention of appellant's counsel is, that the present change of venue law of this Territory is mandatory, and that the court has no discretion, but must grant the change of venue when the affidavit substantially complies with the language of the statute, and is supported by two witnesses who state that they believe the defendant cannot have a fair and impartial trial for the reason stated in his affidavit.

This matter has been considered by this court in the case of the Territory v. Leary, 8 N. M. 180. In that case the precise point was made that is made here, and in considering the case, the court determined that as to the oaths of the supporting witnesses, the trial court had a large discretion, which it was proper for the court to exercise in considering the oaths of such witnesses, and that the court had the power to require an examination of such witnesses under oath. In that case the court said:

"The statute does not say that the proofs in support of defendant's affidavit may be made by the oath of any person, but requires that such person shall be disinterested. Who is to determine whether the persons offered are disinterested? There can be but one answer —the court alone. If the persons offered as disinterested can by their mere ex-parte affidavits close the door against their own examination upon that point in open court, notwithstanding the trial court requires it, a thing so extraordinary, could only be justified by the clear terms of the statute, or rule of court, and there is none. The ease and facility with which change of venue is taken, often to the great delay of causes, the defeat of justice, and the hardship of witnesses, does not require us to construe the change of venue law beyond its plain terms, and in the full and efficient protection of the defendant in a fair and impartial trial."
Further on in the opinion of the court the question of

whether the word "disinterested," as used in the statute, should be considered in its narrow sense, or whether it should be considered in a broad and comprehensive sense, the court further says:

"So here, while the law makes the oath of two disinterested persons conclusively sufficient in support of the defendant's affidavit, the court is vested with a discretion in ascertaining whether such persons are disinterested. For the purposes of this case it will be unnecessary to determine whether the Legislature used the word 'disinterested' in the narrow sense distinguished between persons qualified and those disqualified at common law from testifying, or whether it used it in the broader sense as synonymous with fair-minded and impartial. The statute was passed long after the Legislature had swept away the disqualification of witnesses arising from interest, and it may well be that the rule laid down in Freleigh v. State, 8 Mo. 607, would not apply, but that, construing the statutory expression in the light of the present condition of the law as to the qualifications of the persons testifying (Suth., Const. sec. 247) we should consider the legislative intent to be that those whose oaths were to inform the court and set in motion in judicial action, should be indifferent to the cause in the broader sense of being impartial and fair-minded."

[In the decision above referred to, this court has held that the court is vested with a discretion in the matter of determining whether the subscribing witnesses are such persons as the statute contemplates by the expression "disinterested" in the broad sense of being fair-minded and impartial. This decision was rendered by this court on the eighteenth day of October, 1895, and the present rules governing this court were adopted by it on the first day of September, 1897, and were in force at the time of the trial of this cause in the court below. Rule 9 in regard to change of venue was adopted in the light of this decision, and, therefore, was intended to be a rule

within the decision of the court in that case. The force and effect of a rule of court has been determined in the case of the Rio Grande Improvement Company v. Gildersleeve, 174 U. S. 608, in which it was held that a rule of court has the force and effect of a statute and practically amounts to an amendment of the statute. The third paragraph of rule 9 is as follows: "On motions for change of venue the judge may examine the supporting witnesses upon oath as to their knowledge and interest, and may determine the sufficiency of the affidavit accordingly."

It will be observed that this rule authorizes an examination as to the knowledge and interest of the supporting witnesses as is contemplated by the decision above quoted, in that it was declared that the word "disinterested" should be construed in its broad and comprehensive sense. The counsel contend that the knowledge of the witnesses cannot be inquired into; that the term "disinterested" does not involve the knowledge of the supporting witness to an affidavit for change of venue, but in the light of this decision and the rule of court above referred to, this contention cannot be supported, and it might be remembered further, that there is a very intimate relation between the knowledge of the witnesses and the disinterestedness required by the statute, because it may well be doubted whether a witness supporting an affidavit for change of venue is a disinterested withness who will make an affidavit without any knowledge of the matters and things sworn to by him, and yet, this would be the logical conclusion of the contention of counsel in this case. If the knowledge of the witness cannot be inquired into, then a stranger knowing nothing whatever of the matters sworn to, would be able to compel the granting of a change of venue, although the oath made by him was absolutely false. It certainly could not have been the intention of the Legislature to take away from the courts the power to protect their proceedings from being controlled and directed

in the matter of changes of venue by witnesses who are rank perjurers. If, therefore, the court had the power to inquire concerning the knowledge, interest, impartiality and fair-mindedness of the supporting witnesses, as declared by this court, both in the decision above referred to and the rule adopted by it, the court was vested with a discretion in regard to this motion for change of venue. To reverse this case upon this assignment of error, we must hold that there was an abuse of discretion in the court below in overruling the motion for change of venue. Under the testimony given by the supporting witnesses, there was no abuse of discretion. As to the assignment of error, that the verdict was contrary to the evidence and the weight thereof; it is only necessary to say, that this court has repeatedly held that if it appears there was evidence for the prosecution, which, if true sustains a verdict of guilty, the verdict will not be disturbed on appeal. Territory v. Webb, 2 N. M. 148; Territory v. Maxwell, 2 N. M. 250; Hicks v. Territory, 6 N. M. 596; Trujillo v. Territory, 7 N. M. 43.

The evidence in this case was conflicting, but from the fact that the jury found the appellant guilty of murder in the second degree, it is very evident that they believed the testimony of the Territory, and if they believed the evidence given for the prosecution to be true, there was undoubtedly sufficient evidence in this case to sustain the verdict of the jury.

The fifth assignment of error relates to the fourth paragraph of the court's instructions, and the objection made is, that in the definition of murder in the first degree, in quoting the clause "or perpetrated by an act greatly dangerous to the lives of others" the court used the word "or" instead of the word "of" others, but the transcript filed in this court does not bear out this assignment. That clause is correctly quoted, and the word "of" appears before the word "others" in that clause of the instruction of the court. This court, of course, must be guided by the transcript in its possession, and the

word "of" is there very plainly, and there is no evidence of any erasure or change in the transcript.

The sixth assignment of error criticizes the court's explanation of the meaning of the word "deliberately," as used in paragraph four of the court's charge, and urges that it is inaccurate, misleading and prejudicial to the appellant, but it does not seem to be subject to the objections made. Of course, this word might be explained in different language, but substantially it charges that the word "deliberately" is to be understood to mean that the act was done intentionally, or purposely, and in a cool state of the blood, so that the party would be capable of forming a deliberate design to accomplish the unlawful purpose charged, and it is also correct in informing the jury that the word does not mean that the act was brooded over, or reflected upon for any considerable length of time, or for any length of time. In our opinion, this charge was not calculated to prejudice the appellant, or mislead the jury.

The next objection is to the seventh paragraph of the court's charge in which the court defines express malice, but an examination of this charge will show that the charge is substantially in the language of the statute. The language of the statute, the statutory definition, uses the words "Manifested by external circumstances capable of proof," whereas the charge in this case uses the words: "manifested by external circumstances shown in evidence." This is simply a change of phraseology, adapting the statutory definition to the evidence in this particular case, and certainly could not mislead the jury as contended for by the appellant's counsel.

In the eighth assignment of error, counsel quotes a portion of the fifth paragraph of the court's instructions to the jury, and the objection made to it is found in the use of the word "can" in the clause "then you can find him guilty." To understand this objection, it is necessary to refer to the entire paragraph. Examining that, it will be found that that paragraph informed the

jury that if they believed that the defendant is not guilty of murder in the first degree, that they can find the defendant guilty of murder in the lesser degrees, or if they believed that the act committed was justifiable homicide, as defined in the instructions, or if they entertained a reasonable doubt of the guilt of the defendant in any degree, that the jury can find the defendant not guilty. Used in this connection, which a reading of the entire paragraph shows, we see no objection to the use of the word "can," because undoubtedly the court was correct in giving the jury the information that although they might find the defendant not guilty of murder in the first degree, they could find him guilty of murder in the lesser degrees, or they could find him not guilty, and the use of the word "can" in an instruction of that nature is unobjectionable. The court was not charging the jury in that instruction as to the language of the verdict, in the event of their finding the defendant guilty or not guilty, but was informing them of the latitude allowed them by law under an indictment, which, on its face, was an indictment for murder in the first degree. The entire paragraph of the charge must be considered and not a fragment of it, such as is selected by counsel in the eighth assignment.

Counsel further objects to the fifth paragraph of the court's charge by selecting another fragment of the paragraph which says: "In this case, therefore, it will be your duty to find the defendant guilty of murder in the first degree, or guilty of murder in the second degree, or guilty of murder in the third degree, or not guilty." This is the concluding portion of the fifth paragraph of the court's charge, and we can see no error in that portion of the charge in the connection in which it was used by the court. The counsel's criticism upon this charge is, that it amounted to the court's telling the jury that they must of necessity agree on one or the other of the verdicts referred to, and then counsel suggest that juries have a right to disagree and entertain

Territory v. Gonzales.

an honest opinion. It is apparent, however, that it would be highly improper for a court in any way to suggest in its instructions that the jury had a right to disagree or in any way encourage a jury in failing to agree upon a verdict, and it is perfectly proper for the court to inform a jury that it is their duty to agree upon such verdict as may be proper in the case, giving them, of course, perfect freedom as to determining what their verdict shall be from the evidence in the case. The impropriety of suggesting to a jury in an instruction that they had a right to disagree is apparent at once from the statement of the proposition, and it may not be improper for the court to remark in this connection, that a large majority of the cases in which juries disagree and necessitate a retrial of the cause, grows out of the failure of juries to regard it as their duty to arrive at a verdict, but of course, we do not wish to be understood as saying that a case cannot arise in which a jury would not be warranted in failing to agree.

Paragraph six of the court's instructions is also objected to. In this paragraph the court informed the jury under what circumstances they would be warranted in finding the appellant guilty of murder in the first degree and the objection made is, that at the close of this paragraph, the court should have added "unless they find that the homicide had been either excusable or justifiable under the law." This objection is not well taken. In the first place there is no requirement to that effect in the statutory definition of murder in the first degree, but while a homicide may be justifiable, or excusable under certain circumstances without regard to the degree of murder charged, it is not required that the court shall include in each of his instructions as to the degrees of murder the clause relating to excusable or justifiable homicide. It is sufficient if the court shall fully instruct the jury upon this objection in some portion of his charge, but this can be done, and it is per-

fectly proper to do it, in a separate paragraph, and a reference to paragraph 13, of the court's instructions it is found that the whole law on the subject of justifiable and excusable homicide was given the jury.

The eighth paragraph of the court's instruction, which informs the jury under what circumstances it would be warranted in finding the defendant guilty of murder in the second degree, is objected to for using the following words: "Such killing was unlawful, or perpetrated in the heat of passion without the design to effect death, but in a cruel, or inhuman manner." Counsel argue that this portion of the court's instruction as to murder in the second degree was not applicable under the evidence in this case, and was calculated to prejudice the jury against the appellant. The language quoted is a portion of the statutory definition of murder in the second degree, and the circumstances of the killing in this case, in our opinion, warranted the giving of this portion of the statutory definition. The circumstances of the killing were shown by the evidence, and the question as to whether the killing was done in the heat of of passion without a design to effect death, or in a cruel or inhuman manner was for the jury under the circumstances shown by the evidence. The evidence for the prosecution, which the jury seems to have believed, certainly tended to show that this killing was perpetrated in the heat of passion, his coming to the dance uninvited, his angry, bitter conduct during the evening and at the time being considered, and it was proper for the court to inform the jury that if they so found, they should find the appellant guilty of murder in the second degree.

Paragraph 14 of the court's charge is also objected to by counsel for the appellant, and in connection with this, the first and second paragraphs of instructions asked for on the part of the Territory will be considered as they all relate to the subject of self-defense.

The first instruction given by the court at the request of. the Territory is as follows: "The court instructs the jury that a person charged with the murder of another cannot avail himself of the claim of necessary self-defense if the necessity for such defense was brought on by his own deliberate wrongful act."

This instruction is in almost the identical language used by the court and approved in the case of Adams v. People, 47 Ill. 376. The language used by the court in that case was as follows: "The defendant cannot avail himself of necessary self-defense, if the necessity of that defense was brought on by the deliberate and lawless acts of defendant, or his bantering Bostic to a fight for the purpose of taking his life, or committing a bodily harm upon him in which he killed Bostic by the use of a deadly weapon." Horrigan & Thompson on Self-Defense, page 208; Stewart v. State, supra 191. Of course the instructions of the court must be interpreted in the light of the evidence in the case showing the circumstances under which the killing was done, and this paragraph of the court's instructions was a proper instruction in the event of the jury believing the testimony for the prosecution and disbelieving the testimony given on behalf of the defense.

The evidence for the prosecution disclosed the facts that when the deceased was going with his wife and a friend quietly and peaceably toward the home of his mother-in-law, the appellant who was evidently standing near the door from which he was expected to emerge, and after deceased had gone some distance beyond the appellant, used vile and opprobious language and challenged the deceased to come to him, and the deceased did so, but in doing so, he was shot by the appellant before he reached him, without any evidence that the deceased had any weapons about him, and it being shown that he had none on his person or in his hands so as to endanger the appellant either in the loss of his life or in suffering great bodily injury, and under these circum-

stances no right of self-defense existed in the appellant, as has been decided in numerous cases upon that subject. In the case of Territory v. Baker, 4 N. M. 117, this court said: "In order to justify an assault and to slay an assailant within the meaning of this section, there must be an apparent design on the part of such assailant to either take the life of the person assailed, or the infliction of some great personal injury amounting to a felony if carried out; and in addition thereto, there must be immediate danger of such design being accomplished."

In this case there was not even a fight between the parties, nor any difficulty whatever at the time the shots were fired, at least between the deceased and the appellant, and the only evidence of any combat was that Valencia took hold of the revolver and the appellant and Valencia scuffled for the possession of the revolver, Valencia simply endeavoring to prevent the appellant from firing any more shots at the deceased, and the evidence of the appellant himself was to the effect that when he shot, he shot at the deceased. The court in this instruction was submitting the case to the jury under the evidence and upon the theory of the prosecution, and this is perfectly proper when the court also submits the case to the jury under the evidence and upon the theory of the appellant. In paragraph 14 the court gave another instruction upon this subject, as follows: "You are instructed that before the defendant can avail himself of the plea of self-defense, and justify himself of the killing charged against him, it must appear from all the evidence that there was a reasonable ground on the part of the defendant to apprehend a design on the part of the deceased, Marcelino Ceballes, or those whom defendant claims were with him, to do him, the defendant great personal injury, and that at the time there was imminent danger of such design being accomplished, and that the said defendant then and there honestly believed that he was in imminent danger of then and there receiving from the deceased and those whom defendant

claims were with said deceased, some great personal injury; and that the said deceased, Marcelino Ceballes and those whom defendant claims were with him were in a position and had the ability then and there to do the defendant great personal injury, and that the facts and circumstances were at the time sufficient to convince the defendant of an honest belief that he was then in imminent danger of receiving some great personal injury from the deceased, Marcelino Ceballes, or those whom defendant claims were with Marcelino Ceballes."

This instruction is very full and presents the law substantially within the doctrine laid down in the case of the Territory v. Baker, supra, above quoted. This paragraph is objected to by appellant's counsel, and it is argued that it is not essential or even required that the deceased or those who acted with him should have been in a position, or should have had the ability then and there to do the appellant a great personal injury, but it is only necessary and it was sufficient that it should have reasonably appeared to the appellant that the deceased and those acting with him were then in a position and had the ability to do him serious bodily injury. The appellant's counsel's claim is substantially that the state of mind of the appellant at the time of the homicide is all that is to be considered. It is obvious that the jury cannot determine the state of mind of the appellant at the time the killing occurs. The appellant alone can know that, and the appellant acts at his peril. When the actions of the defendant are being considered by the jury, upon the trial of the cause, it is for the jury to determine whether the defendant had reasonable grounds for believing that he was in danger of losing his own life, or of receiving great personal injury, unless he took the life of his assailant. The mere fact that the appellant testifies that he so believed, is not sufficient unless he is able to satisfy the jury that he had reasonable grounds for apprehending such danger. If the mere testimony of the defendant, that he believed his life was

in danger, or that he believed that he was in danger of receiving great personal injury was final and conclusive upon the jury, then it would be easy for the defendant to secure an acquittal, even in a case where the defendant was in no danger whatever and the circumstances did not warrant him in entertaining the belief that there was any such danger at the time he took the life of another. But the law does not leave it entirely with the defendant to acquit himself by simply testifying to his own belief, but on the contrary, the circumstances of the killing must be such as to enable the jury to determine whether the appearances of danger were sufficient to convince a reasonable man, in the situation of the accused, that death, or great personal injury upon the person of the defendant was intended, and that there was imminent danger that such a design was about to be accomplished. This is one of the questions of fact which the jury must determine under the instructions of the court, and to secure an acquittal on the grounds of self-defense such circumstances must appear, at least, as would raise a reasonable doubt in the minds of the jury as to whether or not the defendant had reasonable grounds for apprehending such danger. Thompson on Trials, sections 2060 and 2167; Territory v. Baker, supra; Sackett on Instructions, page 703; People v. McLeod, 1 Hill 377, Horrigan & Thompson on Self-Defense, page 784; Rippy v. State, ibid 345; Williams v. State, ibid 349; Wesley v. State, ibid 319; Dyson v. State, ibid 304; State v. Scott, ibid 163; Hinton v. State, ibid 83; Harrison v. State, ibid 71; Cotton v. State, ibid 310.

But the appellant contends that these instructions do not fully inform the jury that the grounds for apprehension of danger should be judged by them, from the standpoint of the defendant, and as the same would reasonably appear to the defendant at the time he killed the deceased. Where counsel for appellant objects to the instructions given by the court, as not fully and fairly presenting the law of the case to the jury, counsel

in the court below, should, while the matter is before the trial court, and is within the power of the court to correct, offer such instructions as would fully cover the defects claimed and where no attempt has been made to do this in the trial court, such assignment will not justify reversal in the appellate court. Territory v. O'Donnell, 4 N. M. 196; U. S. v. De Amador, 6 N. M. 173. But in this case the counsel for the appellant did his duty and requested the court to give instructions covering the points desired, and we find that the court granted the requests. By reference to these instructions, five in number, it will be found that every point of objection to the paragraphs of the court's charge, and the instructions given at the request of the Territory as to the issue of self-defense, have been fully covered by the instructions asked for by appellant. At the request of the appellant the court charged the jury that: "If they believed from the evidence that the defendant at the time the wound was inflicted from which the deceased subsequently died, that the deceased, either alone or acting together with other persons, assaulted the defendant, and that it then and there reasonably appeared to the defendant that he was in imminent danger of being wounded or receiving great personal injury at the hands of the deceased, Marcelino Ceballes, and other persons acting in concert with him, and that the defendant fired the fatal shot in the protection of his person, while he was so under the impression that he was in imminent danger of being murdered, or of receiving some serious personal injury to himself, then if you so believe you will find the defendant not guilty."

In the second instruction requested by the defense, the court instructed the jury as follows: "You are further instructed that under the facts and circumstances of this cause the determination of the question as to who provoked the affray and made the first assault materially affects the logical conclusions and the responsibility of the defendant, and inasmuch as under the law

it becomes the duty of the prosecution to prove every material ingredient of this crime beyond any reasonable doubt and to the satisfaction of the jury, before you can be authorized in convicting the defendant, you must be satisfied in your own minds beyond all reasonable doubt that the defendant provoked the fight—made the first assault on the deceased; therefore, if you are in doubt on this point, that is, if your minds are not satisfied whether the defendant provoked the fight and made the first assault or whether the deceased did so, then it becomes your duty under the law to give the defendant the benefit of the doubt and acquit the defendant."

In the third instruction asked for by the defense, the court instructed the jury that: "In determining whether the circumstances existed that would justify the defendant in inflicting the wound upon Marcelino Ceballes which subsequently resulted in his death, you are instructed that you must determine that fact from the condition and circumstances that surrounded the defendant at the time and place of the affray as they reasonably appeared to him at the time, that is, by placing yourselves in your own minds as far as may be possible from the evidence under the same circumstances in which the defendant was placed at the time of the shooting, taking into consideration as far as the evidence may enable you to do so, the temperament of the defendant and his moral and physical courage or the lack thereof."

In the fourth instruction asked for by the defense, the court instructed the jury that if the defendant was attacked he did not need to retreat, but could stand his ground and resist an assault made on him, even to the extent of killing the deceased, and the fifth instruction given for the defense, was a repetition of the law of the Territory on the subject of justifiable or excusable homicide.

An examination of the instructions given at the request of the defendant will show that every point which defendant's counsel has argued as error in the other in-

structions given by the court, has been cured by the instructions given by the court at the request of the appellant, and, indeed, the law laid down at the request of the appellant, was exceedingly liberal to the appellant, and if any error existed at all, it is in the extreme liberality of the instructions in his favor, but of this, of course, he cannot complain. The instructions of the court fully and fairly submitted the whole question of the rights of the appellant as to self-defense, and the assignments of error as to those instructions will be overruled.

Paragraph 19 is objected to upon the ground that the court erred in giving the name of the appellant in his instructions as to the weight of evidence and what might be taken into consideration by the jury in determining the credibility of the witnesses. It is argued that the court erred in singling out the defendant by naming him. An instruction of this nature and broader than the one given by the court in this case, was under consideration in the case of the Territory v. Romine, 2 N. M. 114. It is true that the court in that case intimates that it would be better practice not to name the defendant, but the court does not hold the instructions to be error, because the defendant was referred to. This matter was again before the Supreme Court of this Territory, in the case of the Territory v. Faulkner, 6 N. M. 464. In that case the instruction given by the court was as follows: "The fact that such witness is especially interested in the result of the action or of your own deliberations may be taken into account by you, and you may give such testimony only such weight and credit as you think it fairly is entitled to receive under all the circumstances of the case, and in view of the special interest of such witness in the result of the action."

It was argued in that case that this instruction not only singled out the defendant, but was calculated to discredit his testimony before the jury, but the court held that such an instruction was not error.

The instruction complained of in this case is as follows: "The court instructs the jury that although the law makes the defendant in this case a competent witness, still the jury are the judges of the weight which ought to be attached to his testimony, and in considering what weight should be given to it, the jury should take into consideration all of the facts and circumstances surrounding the case as disclosed by the evidence and give the defendant's testimony only such weight as they believe it entitled to in view of all the facts and circumstances proven on the trial."

By comparing the instruction given in the case of the Territory v. Faulkner, supra, with the instruction numbered 19 in this case, it will be found that the instruction in this case is not as strong as the instruction given in the other case, in this, that it omits the following language: "and in view of the special interest of such witness in the result of the action," the court sustained the instruction given, and in that case it is, therefore, authority for sustaining the instruction numbered 19 complained of in this case.

Paragraph 20 of the court's instructions is objected to on two grounds: First, it is objected that while the court instructed the jury that it was their duty to reconcile all the testimony if possible, the court did not further instruct them, the purpose of such reconciliation, and second, that the court limited the discretion and curtailed the functions of the jury, when the court instructed them that although a witness may be mistaken in some part of his evidence, it does not follow as a matter of law that he had willfully told an untruth, or that the jury would have the right to reject his entire testimony. These objections are of a trivial nature and do not furnish any basis for a reversal of this case. It is perfectly proper for the court to instruct the jury to harmonize the testimony in the case, if they can do so. The charge of the court clearly defined the issue to be the guilt of the defendant, and the jury could not be

misled as to the meaning of the court's language in suggesting that it was the duty of the jury to harmonize the testimony. The court did not inform the jury that they must harmonize the testimony, but that it was their duty to reconcile the testimony if they could do so. The whole purpose of such reconciliation as the jury would clearly understand from the charge of the court, was to determine its bearing upon the charge against the defendant, and it is not error for the court to inform the jury that it is their duty to reconcile apparently conflicting evidence, in order to establish the true facts in the case, upon which to base their verdict. The portion of this paragraph to which the second objection is directed does not show the purpose of the entire instruction. In the former part of the same instruction, the jury had been informed, that if they believed that any of the witness had testified intentionally and deliberately false as to any material matter in issue, that the jury had a right to disregard the testimony of such witness, unless the same was corroborated by other credible evidence, and in that connection the court deemed it proper to inform the jury that if they believed that a witness was mistaken and did not willfully testify falsely, that then it did not follow as a matter of law, that his entire testimony should be disregarded. This instruction states the law correctly, because juries are not at liberty to disregard the entire testimony of a witness, if they believed that the witness had testified erroneously, but in doing so was simply mistaken and did not do so knowingly and willfully. In our opinion, neither of the objections made to this paragraph of the instructions are well founded.

The last objection is, that the instructions of the court taken as a whole are confusing, unintelligible and calculated to mislead the jury. The instructions of the court in this case are not subject to this objection. The instructions of the court presented the case to the jury under the evidence in the case, both from the standpoint

of the prosecution and that of the defense in a full, fair and impartial manner, and upon the issue of self-defense upon which the appellant relied for justification, the instructions not only presented the issue and the rights of the appellant fully and clearly, but in a manner decidedly favorable to the appellant, and taken as a whole the charge upon that subject was wholly unobjectionable from the standpoint of the appellant. Every theory of appellant as to his justification on the ground of self-defense was given to the jury in language prepared and requested by the appellant's counsel.

In paragraph 16 of the court's instructions, the jury were informed of the presumption of innocence in behalf of the appellant in the following forcible language; "The defendant is presumed to be innocent of the crime charged against him and this presumption continues with him until overcome by proof of his guilt beyond a reasonable doubt. This presumption is not a mere form, but is a substantial right, belonging to the defendant, and if you have a reasonable doubt of defendant's guilt, you should acquit him."

And in paragraph 12 of the court's instructions, the jury are again instructed that the defendant must have the benefit of every reasonable doubt whether upon the main case, or as to whether the killing was excusable or justifiable homicide, and the court even goes further and says, if for any other reason they are not satisfied of the defendant's guilt, it is their duty to find the defendant not guilty.

An examination of the entire charge of the court shows it to have been not only not prejudicial to the appellant, but clearly preservative of all his rights under the law and the evidence. The errors assigned, and which have been specifically referred to above, were all embodied in the motion for a new trial in this case, which the court below overruled.

From the conclusion reached by this court upon the errors assigned, it follows that the court below, did not

err in overruling the motion for a new trial and entering judgment upon the verdict of the jury. The judgment of the lower court will, therefore, be affirmed with costs.

Baker, McMillan and Parker, JJ., concur.

Chief Justice Mills tried this case in the lower court, and therefore did not sit in the hearing in this court.