[No. 3334.   Feb. 20, 1930.]

[Rehearing Denied April 11, 1930.]

FANTL v. JOYCE PRUITT CO.

[286 Pac. 830.]

O. E. Little, of Roswell, for appellant.

Reid, Hervey, Dow & Hill, of Roswell, for appellee.

OPINION OF THE COURT

WATSON, J.

On April 1, 1924, Fantl, operating in New York, and Joyce Pruitt Company, a New Mexico mercantile house, entered into a written contract for the rendering of certain service and the furnishing of certain facilities by the former to the latter, and for which the latter should pay the former $150 per month. The term, as counsel agree in interpreting the contract, was two years, except for the provision that, by giving sixty days' notice, either party might terminate the contract at the end of one year.

While Fantl's undertaking consists of twelve specific promises, they all clearly relate to services and facilities to be rendered for the benefit of Joyce Pruitt Company as buyers of merchandise in the New York market; Fantl agreeing to act as "general representative."

On February 23, 1925, Joyce Pruitt Company wrote Fantl, asking that the letter be considered notice of termination of the contract on the following April 1st. Fantl invoked the sixty-day provision of the contract, and declined to consent. On March 9th Joyce Pruitt Company again wrote, insisting upon termination of the contract, and specifying as reasons a number of complaints regarding the service. It made no payments to Fantl after April 1, 1925.

This suit charges Joyce Pruitt Company with breach of the contract, and lays damages at $1,800, the compensation agreed upon for the second year.

The first defense by way of new matter is the only part of the answer which need be mentioned. It recites the fourth of Fantl's specific promises, which was in this language:

"To afford to client any and all advantages of special prices and discounts of whatsoever nature as Alfred Fantl may obtain or

receive from the manufacturers or sellers from whom purchases may be made."

It charges as a breach of this provision that Fantl

"Had been constantly and continuously breaching the contract * * * in that plaintiff had been operating as a middle man, collecting and receiving compensation from manufacturers and sellers and this defendant, and by the use of his firm, or corporation, towit: A. F. Mercantile Corporation, had been acting as a jobber and practically all the orders forwarded from defendant to plaintiff were filled by the A. F. Mercantile Corporation * * * owned and controlled by the plaintiff, and this defendant was not given the discount received from manufacturers and sellers and was, in addition to the purchase price, charged 2½% commission by plaintiff, and in addition thereto was compelled to pay all freight and carriage charges, and had the defendant placed said orders direct with manufacturers and sellers, the defendant could have obtained a discount of from 2 to 10% and said manufacturers and sellers would have paid freight and carriage, and furthermore, the plaintiff did not, at any time afford to the defendant any and all advantages of special prices and discounts in that the plaintiff constantly and continuously quoted the defendant prices upon goods, wares and merchandise that were in truth and in fact higher than said goods, wares and merchandise could have been bought for direct from manufacturers and sellers by this defendant, and for the reasons aforesaid the defendant elected to and did, terminate the contract between plaintiff and defendant on February 23, 1925, as it had a right to do according to the terms thereof."

A single issue was submitted to the jury. It was instructed that, unless plaintiff had breached the contract, he was entitled to recover $1,800 damages, but that, if defendant had shown a breach of the specific promise above quoted by receiving compensation by way of discounts from manufacturers and sellers on goods purchased for the defendant, or the plaintiff had acted as a jobber through a corporation largely owned by him, and had charged commissions in addition to the specified salary, or had not given defendant the advantage of special prices and discounts on purchases, and that defendant had elected to cancel the contract for those reasons, the verdict should be for the defendant. The jury found for the defendant, and judgment followed.

In numerous ways appellant urged below and now contends here: First, that the breach of contract shown in evidence was trivial in amount, was but partial, did not render further performance impossible, and was easily compensable in damages, and therefore, while perhaps the proper subject-matter of a counterclaim, was not sufficient

to rescind. Second, that, if the breach shown was sufficient cause for rescission, it had been waived by recognizing the contract and making payments for compensation thereunder after discovery.

To appellant's first proposition he cites 6 R. C. L. p. 926; 13 C. J. 613; and Putnam City Company v. Minnetonka Lumber Co., 95 Okl. 149, 218 P. 1061. To his second proposition he cites 6 R. C. L. 1022; 13 C. J. 672; Bowers on Waiver, 37; California Raisin Growers' Association v. Abbott, 160 Cal. 601, 117 P. 767; Trippe v. Provident Fund Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; Terry v. Humphreys, 27 N. M. 564, 203 P. 539.

The texts cited are general statements. The decisions cited are clearly distinguishable. They do not greatly aid us.

Among the proofs adduced by appellee were four invoices from A. F. Mercantile Company to Joyce Pruitt Company showing upon their face the addition of 2½ per cent. commission on the purchase price of the goods. These commissions aggregated only $7.30, and appellee had knowledge of the charges no doubt some months before seeking to rescind. Appellant argues as if this were the only substantial evidence of breach, as if it were the only damage shown, and as if it were the only respect in which a breach was claimed. We cannot take so narrow a view of the defense nor of the evidence.

As the above quotation from the answer shows, it was not a particular charge or exaction that was relied upon, but a continuous course of dealing, violative of the true spirit and purpose of the contract. There was evidence tending to show that, when appellant was intrusted with making purchases for appellee, they were almost invariably made of the A. F. Mercantile Company, which he admits to have been his controlled and largely owned corporation; that in many instances prices were charged higher than appellee could have obtained elsewhere without aid or advice from appellant; that at times the usual and prevailing trade and cash discounts were not allowed, and that as a rule defendant was required to pay transporta-

tion charges where it was the practice that the goods be delivered free; that remittances made by appellant (5 in all) which he claimed were "special" or "confidential" rebates secured by him represented merely the usual cash or trade discounts allowed all buyers.

There was evidence that buyers from appellant's office delegated to assist appellees' representative in making purchases in New York seemed more interested in putting him in touch with particular firms, and in the volume of purchases, than in the prices to be paid, leading to an inference that either appellant or his employed buyers was or were receiving secret rebates or discounts.

It is true that the contract contains no guaranty or representation that the services or facilities afforded by appellant would result in any particular amount of saving, or in any saving, to appellee. Appellant may have complied faithfully with certain of the specific promises of service for which the compensation was fixed, such as furnishing desk room in his office to appellee's buyer when he was in New York, and keeping appellant advised as to market and style conditions. Nevertheless, common sense would lead one to conclude that a material, if not the controlling, consideration, from appellee's standpoint, was the expectation that appellant, representing, as he claimed, 160 concerns buying merchandise in the New York market, would be able to make savings in the matter of prices. Certainly, if appellant had acted in entire good faith, he could have done for appellee as well as appellee could have done for itself.

We do not question the general principles urged by appellant, but we do not think them applicable here. The contract creates a relation of trust and confidence. It demands good faith. Without it the relation is intolerable. Appellee, having for sufficient reasons lost confidence in the integrity of appellant, could not continue to deal with him. If he could not trust appellant to place orders for him, nor trust appellant's buyers to advise him in placing orders, there was little left of the service for which it contracted. The damages in such a case are practically unascertainable, and the only adequate relief is rescission.

Nor could the trial court properly have held, as requested, that there had been a waiver. It took time and recurrence of offenses to satisfy appellee that the contract was being violated in its essentials. He may have waived the various irregularities as independent causes for rescission. We do not think he waived the right to prove them as a course of conduct.

■■ Appellant complains further that the letter of March 9th above referred to was erroneously received in evidence, over his objection that it contained self-serving statements. When the objection was made, counsel for appellee announced that it was offered merely for the purpose of showing why appellee had elected to rescind the contract. The court when admitting it stated that he would limit the use of the evidence in his instructions. He failed to do so; but of this appellant is not in a position to complain. He tendered no instruction upon the point, and in no manner called the court's attention to it again. Appellant now urges that the reason given by appellee for rescinding the contract was immaterial. He did not make this contention at the trial. The trial court thought it material, and submitted the question to the jury. Appellant had the advantage of an instruction to the effect that appellee could not rescind for one reason and prove another. We see no occasion to disturb the judgment on this ground.

We conclude that the judgment should be affirmed and the cause remanded.

BICKLEY, C. J., and PARKER, JJ., concur.

CATRON and SIMMS, JJ., did not participate.