232 P.2d 982

### STATE v. ALANIZ.
### No. 5350.

Supreme Court of New Mexico.
June 26, 1951.

314

J. D. Weir, W. B. Darden, Las Cruces, for appellant.

Joe L. Martinez, Atty. Gen., Walter R. Kegel, Asst. Atty. Gen., for appellee.

LUJAN, Chief Justice.

Valeriano Alaniz and Luis Campos were tried and convicted in the district court of Lincoln county of the murder of Pete Nalda. Campos was sentenced to life imprisonment. Alaniz was sentenced to death and he appeals from the judgment and sentence entered upon the verdict so returned. The parties will be referred to as they appeared in the lower court.

The fatal tragedy occurred on the Lewis-Sanders ranch which is located about twenty miles east of Corona, New Mexico, between 11:30 P.M. and midnight on February 26, 1950. Mr. Gratien Ernaut as a witness for the state, gave substantially the following version of the affair. On the night in question between 11:00 and 11:30 o'clock, while he was asleep in his bedroom the defendant Luis Campos entered the room with a knife in his hand and ordered him to get up. Then Campos took him into the kitchen where his uncle, Pete Nalda, and the defendant, Valeriano Alaniz, were seated by the table. Without further delay the defendants took him and Pete Nalda to the latter's bedroom to search for a check book. At that time Campos held a knife in his hand and Alaniz held a pistol. They were compelled to walk ahead of them. While in Nalda's bedroom Campos secured a pistol from a dresser drawer and he, to-

gether with Alaniz, leveled their pistols at both of them and informed Nalda that they wanted some money. Then the defendants took both Ernaut and Nalda back to the kitchen where at the point of guns they compelled Nalda to make out checks in the sums of $15.00, $250.00, $370.00 and $460.-00, respectively. Alaniz requested Nalda to make out the checks in the name of Pedro Garcia. Then Alaniz ordered Ernaut to endorse them. The defendants were in a mad and angry mood as well as in a hurry. When the checks were written and endorsed each defendant took two of them. Then the defendants told Nalda to put on his coat and hat, but he told them he wanted to put on his shoes. The defendants informed him that it was not necessary as they were not going to take him very far. That they were both taken outside the house at the point of guns held in the hands of the defendants. That while walking towards a pick-up truck which was parked close to the house Nalda looked back and the defendants told him, "It doesn't pay for you to look back, we are not going to shoot you in the back." That when they had reached a point close to the little truck or pick-up, defendants said, "Now is the time to kill him." At this time Campos took out a bottle from his coat pocket and handed his gun to Alaniz; then he offered Ernaut a drink. When Nalda saw this he started to run and Campos told Alaniz, "Shoot him, shoot him."

Ernaut then heard two shots fired in Nalda's direction. He ran in the opposite direction and they shot at him. He heard the bullet whiz by him.

John Nalda, a nephew of the deceased, was also a witness for the state. He testified that he went to look for his uncle the next morning and found his dead body in a ditch about 700 yards from the house.

Dr. J. P. Turner, also a witness for the state, testified that he examined the body of Pete Nalda and found a gun shot wound which had penetrated the skull at the left back ear and had come out above the right ear; that he also found a gun shot wound in the back of deceased in the region of the right shoulder.

T. E. Kelly, a funeral director, also a witness for the state, testified that he examined the body of the deceased and found a bullet hole an inch and a half back of the left ear, passing through, and that it was taken out just over the right ear; that he found another bullet wound which entered the body in the back between the shoulders.

The defendants left the scene of the crime in Alaniz's truck and traveled through different parts of the county in an effort to evade the officers. They finally concealed themselves in an abandoned house at Pastura where they were apprehended.

The first, second, third, fourth and fifth assignments of error argued under Point I are based upon the ground that the defendant, Valeriano Alaniz, was never given or afforded a preliminary hearing or examination upon the offense charged, as required by constitutional and statutory provisions, and that he did not waive such right.

Article 2, Section 14, New Mexico Constitution, provides: "No person shall be held to answer for a capital, felonious or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney-general or their deputies, except in cases arising in the militia when in actual service in time of war or public danger. No persons shall be so held on information without having had a preliminary examination before an examining magistrate, *or having waived such preliminary examination.*" (Emphasis ours.)

Section 42–301 of the 1941 Compilation provides: "When the defendant is brought before the magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings, *and also his right to waive an examination* before any other proceedings are had." (Emphasis ours.)

The above provisions are for the benefit of the accused. It has not the nature of a personal privilege under which. he may insist upon a preliminary examination before he can be put upon his trial or called upon to answer an information, but by their express terms he may waive this right. We think the record fails to sustain the defendant's contention. When the defendant was brought before the magistrate and arraigned, he entered a plea of guilty to the complaint, and, without the examination of witnesses, was bound over to the district court. In Latimer v. State, 55 Neb. 609, 76 N.W. 207, the court said:. "If the accused, on being arrested and brought before an examining magistrate, voluntarily pleads that he is guilty of the crime charged against him, he thereby waives his right to a preliminary examination."

It is urged, however, that in entering the plea of guilty to the complaint the defendant acted without the advice of counsel. It is true that the defendant did not have counsel. The record shows, however, that when he was brought before the examining magistrate he was told that he was entitled to have counsel represent him, and that he was entitled to a continuance if he desired, and that it was not necessary for him to plead. After being so advised the defendant stated that he was ready to plead, and upon being arraigned to the complaint he pleaded guilty. In so doing

he expressly waived a preliminary examination. It follows that there is nothing in the contention of defendant upon this point.

■ The tenth assignment of error argued under Point IV is based upon the admission in evidence, over defendant's objection, of the undated and unsworn exparte written statement of the State's witness, Gratien Ernaut. It is the contention of defendant, that the sole purpose of introducing such statement was to corroborate and bolster the oral testimony given by this witness. It is true that the State cannot corroborate its own witness by showing his prior consistent statements. State v. Bell, 206 Iowa 816, 221 N.W. 521; Walding v. State, 23 Ala.App. 185, 122 So. 296; Higdon v. State, 25 Ala.App. 209, 143 So. 213; Griffith v. Commonwealth, 250 Ky. 506, 63 S.W.2d 594; Byrd v. State, 154 Miss. 742, 123 So. 867; State v. Johnson, 334 Mo. 10, 64 S.W.2d 655; Cupit v. State, 103 Tex.Cr.R. 13, 279 S.W. 455; Russell v. Cavelero, 139 Wash. 177, 246 P. 25. However, the objection here urged to the effect that the purpose of introducing the statement of Gratien Ernaut was to corroborate and bolster the oral testimony being given by the witness on stand was not presented in the court below. There the objection was that the statement was undated and that a proper foundation had not been laid for its introduction. It seems clear that the proposition presented here was not raised in the court below, and is not now available.

■ The eleventh and twelfth assignments of error argued under Point V are based upon the admission in evidence, over defendant's objection, of the written statement made by defendant's co-defendant, Luis Campos, outside his presence. In admitting a written confession of a co-defendant, everything should be stricken from it except that which refers to the defendant confessing it. He ought not to be permitted to confess for another. However, in the instant case the court did not err in admitting it and limiting it to Luis Campos. When the confession was admitted the court limited its effect to the co-defendant, and instructed the jury that they should not consider it as against Valeriano Alaniz.

■ The thirteenth, fourteenth and fifteenth assignments of error argued under Point VI are predicated upon the ground that the State's evidence wholly failed to establish the crime of murder in the first degree and such offense was erroneously submitted to the jury. Judged from the standpoint of the State's evidence the offense was clearly murder. The evidence so clearly justified and required submission to the jury of the offense of which defendant was convicted that it is unnecessary to discuss that point. We conclude that there was no error in submitting to the jury the question of first degree murder.

■ The sixteenth and seventeenth assignments of error argued under Point VII are based upon the refusal of the trial court to give a requested instruction as to manslaughter, it being urged that there were sufficient facts contained in the written statement made by the defendant following his arrest and incarceration, and introduced in evidence by the State without objection, to require such instruction. There was some evidence, which, if believed by the jury, would have warranted a finding that the homicide was committed under a provocation to reduce the offense to manslaughter. The defendant in his written confession stated: "I told him that I came simply to borrow some gasoline so that I could keep on going. He then came towards me with the knife in his hand—his hand being up-lifted. And then I ran. * * * I ran for about a block and Pete caught up with me and grabbed me by the collar and I fell down as I was very tired and Pete fell along side me. I then got up very mad. When I got up, I did not see the knife in his hand, but he was very mad and I could see no other defense, so I pulled out the gun and shot at him." There was evidence, therefore, justifying and requiring a submission of manslaughter to the jury, and it was error to refuse an instruction in that regard. Territory **v.** Lynch, 18 N.M. 15, 133 P. 405; State v. Kidd, 24 N.M. 572, 175 P. 772; State **v.** Simpson, 39 N.M. 271, 46 P.2d 49; State v. Martinez, 39 N.M. 290, 46 P.2d 657.

■■ This brings us to the most serious matter involved in this appeal, which is based upon alleged error in overruling defendant's motion for change of venue. This court has uniformly held that applications for change of venue are addressed to the sound discretion of the trial court, and that its refusal of such motion will not be held error unless it appears that the court acted unfairly and committed palpable abuse of discretion. Sound discretion or judicial discretion is not consonant with the will of, or the arbitrary discretion of, the court adduced from whim or caprice. It has reference to that impulse or discretion of the court which is guided by law, caution, and prudence; it is an equitable determination of what is just and proper under the circumstances.

■ Applications for change of venue under our law, Section 19–503, Compilation of 1941, are predicated on a well-grounded "fear" that he is unlikely to obtain a fair trial and an impartial jury, in the county where the claimed crime occurred. We do not understand the statute to mean that it must be conclusively shown that it is impossible to have a fair trial in the county where the venue is laid, but it is sufficient to show a reasonable apprehension that the defendant will not secure a fair and impartial trial or that

the jury are under an influence inimical to the accused.

The defendant seasonably filed his motion for change of venue, supported by the affidavit of his counsel, which met the requirements of the statute. The State did not controvert the charges in this motion by any positive pleading whatsoever, nor did it offer any testimony to the contrary. Consequently the allegations of the motion and accompanying affidavit must be accepted as true. The trial judge, however, made the following remarks: "The court doesn't feel that these men cannot get a fair trial in Lincoln County. On the other hand, he thinks they can get a fair trial as they can get in any county. The Court is somewhat familiar with the people in Lincoln County, having dealt with them six or seven years, and as far as the influence of the Nalda family, they have quite a bit of influence in one portion of the county, around Corona, but Capitan, Picacho, San Patricio, Green Tree, Ruidoso, there I would say that half of the people never heard of the Nalda family. I am going to overrule the motion." The remarks made by the court do not contradict the material statements of fact contained in the motion for change of venue. They present the opinion of the trial judge who lives over a hundred miles from Lincoln County that "he thinks the defendant can get a fair trial as he can get in any county."

Where the defendant files a proper motion for a change of venue, which is duly supported, showing that the state of feeling in a county is such that he cannot obtain a fair trial, and those charges are not controverted, the defendant is entitled to a change of venue and the trial court has no discretion except to sustain his motion for it. Schultz v. Young, 37 N.M. 427, 24 P.2d 276. So, the defendant in this case was put upon his trial in contravention of his constitutional guaranties and of the statutes enacted for his protection. This the court below should not have permitted, and this court should not now permit the conviction to stand.

All other assignments to which defendant directed argument in his brief have been considered but they involve questions not likely to arise on another trial of this case.

It may be Alaniz is guilty, and should, and will be, punished, but whatever may be the degree of his guilt, the law demands that he be given a fair trial by an impartial jury, according to law.

For the reasons indicated, the judgment is reversed, with directions to sustain the motion for a new trial, set aside the verdict, and proceed consistent herewith. It is so ordered.

SADLER, McGHEE, COMPTON and COORS, JJ., concur.