453 P.2d 192

Stephen Frank McCAULEY, Plaintiff-
Appellee,

v.

Charles RAY and Brock Cattle Company
(NSL), a New Mexico Corporation,
Defendants-Appellants.

No. 8473.

Supreme Court of New Mexico.

Dec. 16, 1968.

Rehearing Denied April 24, 1969.

E. Forrest Sanders, W. W. Bivins, Joe H. Galvan, Las Cruces, for appellants.

Burks & Wanek, Garnett R. Burks and Ralph D. Wanek, Las Cruces, Rodey, Dickason, Sloan, Akin & Robb, Robert G. McCorkle, Albuquerque, Serna & Martin, Silver City, for appellee.

## OPINION

CHAVEZ, Chief Justice.

Suit was brought by plaintiff-appellee Stephen Frank McCauley in the district court of Grant County against defendants-appellants, Charles Ray and Brock Cattle

Company, and against defendant Grace B. Ray to recover damages for personal injuries resulting from a shooting. The jury returned a verdict for appellee and against appellants in the amount of $470,000. From the judgment on the verdict, appellants bring this appeal.

In his complaint appellee alleged, among other things, that on or about August 9, 1965, Charles Ray willfully, wantonly, maliciously and in heedless and reckless disregard of appellee's rights, shot appellee in the chest with a 22 caliber rifle; that Charles Ray and Grace B. Ray were at the time of the shooting agents of Brock Cattle Company and were acting within the scope of such agency; that at the time of the shooting appellant Charles Ray had a vicious and violent disposition and temperament which was known, or in the exercise of due care should have been known, to Grace B. Ray and Brock Cattle Company; that Grace B. Ray and Brock Cattle Company were negligent in retaining Charles Ray as an agent of Brock Cattle Company, and in permitting him to come into contact with the general public in connection with the business of Brock Cattle Company. Appellee predicated liability of Brock Cattle Company (1) upon the doctrine of respondeat superior; and (2) upon primary negligence in retaining Charles Ray as an agent and permitting him to come into contact with the general public. Issue was joined by a general denial. Appellants filed a motion for a change of venue which was denied after a hearing on the motion. Appellants filed a motion for summary judgment which was also denied after hearing. Trial was had on the merits before a jury and judgment was entered upon the jury's verdict in favor of appellee.

The threshold question on this appeal is whether or not the trial court erred in denying appellants' motion for change of venue. The relevant statutes in this matter are § 21-5-3, N.M.S.A., 1953 Comp., 1967 Pocket Supp., and § 21-5-4, N.M.S.A., 1953 Comp., which are, in pertinent part, as follows:

"21-5-3(A). The venue in all civil and criminal cases shall be changed, upon motion, to some county free from exception:

"* * *

"(2) when the party moving for a change files in the case an affidavit of himself, his agent or attorney, that he believes he cannot obtain a fair trial in the county in which the case is pending because:

"(a) the adverse party has undue influence over the minds of the inhabitants of the county; or

"(b) the inhabitants of the county are prejudiced against the party; or

"(c) because of public excitement or local prejudice in the county in regard to the case or the questions involved therein, an impartial jury cannot be obtained in the county to try the case; or

"(d) any other cause stated in the affidavit."

"21-5-4. Upon the filing of a motion for change of venue, the court may require evidence in support thereof, and upon hearing thereon shall make findings and either grant or overrule said motion."

Appellants moved for a change of venue, submitting affidavits stating (a) that they believed that they could not obtain a fair trial in Grant County because the appellee had undue influence over the minds of the inhabitants of the county; (b) that they could not obtain a fair trial in Grant County because the inhabitants of the county were prejudiced against appellants; (c) that because of public excitement and local prejudice in Grant County in regard to the case and the questions involved therein, an impartial jury could not be obtained in the county to try the case; (d) that appellants could not obtain a fair trial in Grant County because an account in the local press which made it appear that appellant Charles Ray was in a bar on the afternoon of the shooting preju-

diced the minds of Grant County inhabitants; and (e) that appellants could not obtain a fair trial in Grant County because excitement and prejudice against appellant Charles Ray, amplified and kept alive to a great extent by newspaper accounts which purported to give the details surrounding the shooting, had not subsided and would not subside for years to come.

A hearing on the motion was held and testimony heard of appellants' and appellee's witnesses. The trial court made, among others, the following findings of fact and conclusion of law, all of which are challenged by appellants:

Findings of Fact:

"5. That the plaintiff does not have any undue influence over the minds of the inhabitants of Grant County, New Mexico.

"6. That the inhabitants of Grant County, New Mexico, are not prejudiced against the defendants in this cause, or against any one of them.

"7. That there is no public excitement or local prejudice in Grant County, New Mexico, in regards this case or the questions involved therein.

"8. That there has been no widespread, adverse or inordinate amount of publicity given to this case or to the matter complained of in the Complaint on file herein.

"9. That an impartial jury can be obtained in Grant County, New Mexico, to try this case."

Conclusion of law:

"1. That the Motion for Change of Venue heretofore filed in this cause by the defendants should be overruled and the same is hereby denied and overruled."

■ Appellants' objection to the above mentioned findings is that they are not supported by substantial evidence. Several witnesses testified in support of and several in opposition to the motion. The process of determining whether or not the facts necessary for a change of venue exist is the same as that followed in determining any other fact in a case. State v. Nabors, 32 N.M. 453, 259 P. 616 (1927). Thus, the process used to determine whether or not there was substantial evidence to support the trial court's findings on the motion for change of venue is the same as the process used to determine whether or not there was substantial evidence to support a finding of fact with regard to any other needed ultimate fact in a case. Some of the basic rules of this process were succinctly stated in Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967), as follows:

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Wilson v. Unemployment Sec. Comm'n, 74 N.M. 3, 389 P.2d 855, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn. Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. On appeal, all disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and the evidence viewed in the aspect most favorable to the verdict. Totah Drilling Co. v. Abraham, 64 N.M. 380, 328 P.2d 1083; State ex rel. Magee v. Williams, 57 N.M. 588, 261 P.2d 131; Sessing v. Yates Drilling Co., 74 N.M. 550, 395 P.2d 824; Witt v. Marcum Drilling Co., 73 N.M. 466, 389 P.2d 403; Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568. Nor does the fact that there may have been contrary evidence which would have supported a different verdict permit us to weigh the evidence. Renehan v. Lobato, 55 N.M. 532, 237 P.2d 100; State ex rel. Reynolds v. Lewis, 74 N.M. 442, 394 P.2d 593. * * *"

■ We hold that testimony which was presented at the hearing on the motion for change of venue amounts to substan-

tial evidence to support the findings of fact of the trial court.

The greater part by far of the newspaper coverage of which appellants complain sets out some of the facts surrounding the shooting incident only as reported, purported and alleged facts. One headline read, "Rancher Gunned From His Horse Near White Signal," and part of the material in the newspaper articles was treated as fact rather than as alleged fact; however, considering the testimony given at the hearing on the motion for a change of venue along with the newspaper coverage, we cannot say that the trial judge abused his discretion in denying the motion. Appellants cite State v. Shawan, 77 N.M. 354, 423 P.2d 39 (1967), to support their position regarding the newspaper coverage. However, Shawan was a case in which a motion for change of venue was denied without a hearing and thus it is not applicable here. Also, we quote the following from Shawan to show other differences:

> "* * * The content of the news story contained much of the evidence relied upon by the state. The release of the story on the evening before the trial, coupled with the additional information concerning the appellant's prior criminal record plus the fact that the appellant and his companion were traveling in a stolen car all combined to create an atmosphere incompatible with impartiality. * * *"

Appellants also cite Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). However, as we pointed out in State v. Barela, 78 N.M. 323, 431 P.2d 56 (1967), the subject of criticism and the cause for reversal in the Sheppard case was prejudicial publicity and disruptive influences attending the prosecution which deprived petitioner of a fair trial.

The trial court's findings of fact Nos. 5, 6, 7, 8 and 9 are the direct contrary of most of the averments in the affidavits supporting the motion. These findings are supported by the record. The remaining

averments were (1) that, at the time appellant Charles Ray was arraigned on charges relating to the shooting, a number of friends, acquaintances and relatives of appellee appeared, creating an atmosphere of prejudice and possible violence against the person of appellant Charles Ray, in turn causing law enforcement officers to keep appellant Charles Ray confined until the crowd dispersed; (2) that, at the preliminary hearing, numerous law enforcement officers were on hand to protect appellant Charles Ray from harm which might result because of the high feeling of excitement and prejudice which had been engendered by the shooting; and (3) that this led to the suggestion that all persons entering the room where the preliminary hearing was being held be searched for concealed weapons. These averments are not sufficient, in any event, to require that the trial court grant the motion, even in the absence of testimony casting doubt upon the truth of the averments. We cannot say, on the basis of these averments alone, that appellants would not secure a fair and impartial trial in Grant County. It is for the trial court to determine, on the basis of substantial evidence, whether there is a reasonable apprehension that a fair trial cannot be obtained. This determination is to be made by the trial judge. As to the standard to be applied by the trial court in considering a motion for change of venue, this court stated in State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951), that:

> "Applications for change of venue under our law, Section 19–503, Compilation of 1941 [which section is in pertinent part substantially the same as our present statute § 21–5–3, supra], are predicated on a well-grounded 'fear' that he is unlikely to obtain a fair trial and an impartial jury, in the county where the claimed crime occurred. We do not understand the statute to mean that it must be conclusively shown that it is impossible to have a fair trial in the county where the venue is laid, but it is sufficient to show a reasonable apprehension

that the defendant will not secure a fair and impartial trial or that the jury are under an influence inimical to the accused."

Conclusion of law No. 1 follows from the findings of fact and, in view of what we say below in regard to appellants' requested findings of fact and conclusions of law, is unassailable.

■ Appellants challenge the right of appellee to put on any testimony in opposition to the motion for change of venue and challenge the trial court's right even to consider any such testimony because of § 21–5–4, supra. However, we will not consider this challenge because appellants did not object in the court below to appellee's witnesses testifying. Failure to object to the admission of evidence constitutes a waiver of objection, and in such case the objection cannot be raised for the first time on appeal. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671 (1952); Bishop v. Mace, 25 N.M. 411, 184 P. 215 (1919); Hancock v. Beasley, 14 N.M. 239, 91 P. 735 (1907).

Appellants also contend that the trial court erred in refusing appellants' requested findings of fact Nos. 5, 7, 8, 9, 10, 11, 12 and 13, and in refusing appellants' requested conclusions of law Nos. 1, 2, 3 and 4.

■ The trial court did not commit error in rejecting all of those requested findings and conclusions. As to requested finding No. 5, we note that the following colloquy occurred in the course of the hearing:

"MR. SANDERS: May it please the Court, with me having participated, I don't know whether I've disqualified myself as a witness but if not I would like to be sworn and testify in this matter.

"THE COURT: Well, I don't wish to be light-hearted. All I read in your affidavit was that you were accused of being in the bar and you were really in the club next door to the bar.

"MR. SANDERS: That's right.

"THE COURT: And I think I would rather evaluate your affidavit rather than have you testify.

"MR. SANDERS: All right, sir. Now, please, the affidavit goes further as to the excitement here at the Courthouse at the time bond was made.

"THE COURT: I think you ought to read it for the record to be sure that I considered it.

"MR. SANDERS: All right, sir."

It is not apparent to us from the record whether Mr. Sanders was making a clear offer to testify. It was counsel's duty to make it clear if he wanted to testify; however, instead, he seemed to acquiesce in the ruling that he would not be allowed to testify. Under these circumstances, there is no merit to appellants' claim of error. "It is too well established for dispute that a party litigant may not invite error and then take advantage of it." Hodgkins v. Christopher, 58 N.M. 637, 274 P.2d 153 (1954); compare Williams v. Yellow Checker Cab Co., 77 N.M. 747, 427 P.2d 261 (1967).

■ As to the requested findings Nos. 7, 8, 9, 12 and 13, all assume a test contrary to that which we have adopted regarding motions for change of venue and appeals from denials thereof. It is the function of the trier of facts to weigh the evidence and determine the credibility of the witnesses and we will not do this on appeal. Tapia v. Panhandle Steel Erectors Company, supra; Fitzgerald v. Fitzgerald, 70 N.M. 11, 369 P.2d 398 (1962); Dowaliby v. Fleming, 69 N.M. 60, 364 P.2d 126 (1961); Luna v. Flores, 64 N.M. 312, 328 P.2d 82 (1958). The applicable question upon a motion for change of venue is whether or not there exists a reasonable apprehension that the movant will not secure a fair and impartial trial by a fair and impartial jury in the county, State v. Alaniz, supra; and this question is to be answered in the same manner as are fact questions in other cases. State v. Nabors, supra. We will reverse a trial court's denial of a motion for change of venue only

when it is shown that the trial court acted unfairly or committed a palpable abuse of discretion. State v. Barela, supra; State v. Chavez, 58 N.M. 802, 277 P.2d 302 (1954); State v. Fernandez, 56 N.M. 689, 248 P.2d 679 (1952); State v. Alaniz, supra.

Requested findings Nos. 10 and 11 were properly refused, because the testimony given by witnesses called by appellee could cast into doubt the testimony given by witnesses called by appellants, and the trial court's findings supported by substantial evidence will not be disturbed by us. Tapia v. Panhandle Steel Erectors Company, supra; Fitzgerald v. Fitzgerald, supra; Dowaliby v. Fleming, supra; Luna v. Flores, supra.

Appellants argue, citing State v. Alaniz, supra; Schultz v. Young, 37 N.M. 427, 24 P.2d 276 (1933); and Territory v. Gonzales, 11 N.M. 301, 68 P. 925 (1902), that the trial court abused its discretion in denying the motion, because a sufficient motion and affidavits were filed, and because the averred facts were not contradicted since no counter-affidavits were filed, and the testimony of appellee's witnesses was only personal opinion and did not show the feeling of the citizens of Grant County. However, in view of what we have said above, there was contradiction of appellants' witnesses by appellee's witnesses. State v. Alaniz, supra, is not applicable here in the way in which appellants would have us use it, because in Alaniz the averments were not controverted, either by way of positive pleading or testimony and, therefore, the averments had to be accepted as true. Schultz v. Young, supra, is not applicable because there the trial court's denial of the motion for change of venue was held to be error for the reason that the denial was made without hearing evidence in support of the motion, even though the motion and affidavit there complied with the requirements of the statute on change of venue. Territory v. Gonzales, supra, does not furnish any support for appellants' position as the function of the trial judge upon a motion for venue change

was altered by statute subsequent to that decision. See Schultz v. Young, supra.

Where, as here, there is substantial evidence supporting the ruling of the trial court, we will not reverse. In view of our discussion above, appellants' requested conclusions of law are left unsupported by findings and it was not error for the trial court to refuse them.

We next consider together several of appellants' points on appeal, which are to the effect (1) that the trial court erred in admitting evidence concerning Charles Ray's temperament and disposition; (2) that the trial court erred in refusing to strike the testimony concerning Charles Ray's temperament and disposition; (3) that the trial court, having failed to give an instruction regarding the selection and retention of Charles Ray as an employee of the Brock Cattle Company, erred in admitting evidence concerning Charles Ray's temperament and disposition, and the trial court thus injected into the lawsuit a false and misleading issue; and (4) that the trial court erred in admitting incompetent and prejudicial evidence.

The first question to be resolved is whether or not the jury should have been permitted to consider any of the evidence concerning Charles Ray's temperament and disposition. Appellee alleged in his complaint that Charles Ray had a vicious and violent disposition and temperament which was known, or in the exercise of due care should have been known, to Grace Ray and appellant Brock Cattle Company; that Grace Ray and appellant Brock Cattle Company were negligent in retaining Charles Ray as an agent of the company, and in permitting him to come in contact with the general public in connection with the business of the company. Although the proof was offered in support of these allegations, it appears that the issue of negligence on the part of Grace Ray and the corporation in employing and retaining a person of such violent propensities was not submitted to the jury by any instructions.

Appellee tendered an instruction on the theory of negligent hiring and retention, but appellee has not appealed from the trial court's refusal to give the requested instruction. Appellants urge that if it was proper to admit the evidence of temperament and disposition, once having admitted this evidence, the trial court erred in failing to instruct the jury on the applicable law. Appellants assert that, without an instruction on the applicable law, it was error to allow the jury to consider evidence of temperament and disposition.

In our view, Fantl v. Joyce Pruitt Co., 34 N.M. 573, 286 P. 830 (1930), provides an answer to appellants' argument. It was there held that when evidence is admitted over objection, with a statement by the court that its use would be limited by the instructions but the court fails to so instruct, an appellant cannot complain of this action if he does not submit a limiting instruction, or in some manner call the omission to the attention of the court. Since the jury was not instructed on the issue of negligent hiring and retention, it should have been advised that this evidence was not to be considered, or that its use was limited to particular parties and issues. However, no such request having been made and the court not having been alerted to the problem at the time the instructions were prepared, appellants will not be heard to complain. See Rule of Civil Procedure 51 (§ 21–1–1(51), N.M.S.A., 1953 Comp.); Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798 (1961); 1 Wigmore on Evidence, § 13, at 301 (3d Ed. 1940); McCormick on Evidence, § 59, at 136 (1954).

At the trial, one of appellee's counsel, in closing argument, alluded to the evidence on Charles Ray's disposition and temperament as a circumstance bearing upon the question of the liability of the Brock Cattle Company. Appellants argue that this argument was prejudicial to them. If it was error to so argue to the jury, appellants cannot now complain of it for they made no objection to it at the trial. Objections to arguments of counsel should be made in time for the trial court to rule on them and to correct them, where it is possible to correct them by a cautionary instruction before the jury retires. Jackson v. Southwestern Public Service Company, 66 N.M. 458, 349 P.2d 1029 (1960); see, Griego v. Conwell, 54 N.M. 287, 222 P.2d 606 (1950).

Appellants state the sole issue here is that of whether or not there was sufficient evidence to support the verdict against the Brock Cattle Company under this theory. With regard to this issue appellants argue, first, that Charles Ray was not an employee, i. e., a servant, of the Brock Cattle Company; and, second, that if he was an employee of the Brock Cattle Company, then his act of shooting appellee was not done within the scope of his employment. In determining such an issue on appeal:

"* * * [A]ll disputed facts are resolved in favor of the successful party, all reasonable inferences indulged in support of the verdict, all evidence and inferences to the contrary disregarded, and the evidence viewed in the aspect most favorable to the verdict. * * *"

Tapia v. Panhandle Steel Erectors Company, supra. With this in mind, we look to the following evidence. Charles Ray testified that he married Grace Ray in 1935 and then began doing "general work," consisting of helping with the cattle, doing cement and rock work and fixing fences for the cattle company; that he and Grace Ray ran the ranch; that they confided in one another about the running of the ranch and communicated continually about the welfare of the ranch; that he retired from the vice presidency of the corporation in January 1965, because he could no longer ride horseback, but that he continued to do a little work for the corporation when he felt like it. Charles Ray's compensation was "room and board and my clothing and things that I need" and "a few dollars once in a while" from Grace Ray, but Charles Ray did not know whether this came from personal funds or corporate funds. Grace Ray, president of the corporation, testified that, after Charles Ray's retirement, he con-

tinued to work doing chores and all of the things he had done before, though to a lesser extent; that on the day of the shooting, Charles Ray was driving a corporation pickup truck for corporate purposes and working for the corporation. Later, Charles Ray testified that, on the morning of the shooting which was August 9, 1965, his conduct was exactly the same as if he had not resigned the previous January.

On the evening prior to the day of the shooting, Grace Ray telephoned appellee, advised him that some of his cattle were on the Ray Ranch (Brock Cattle Company ranch) and asked him to come over and get them. Appellee had an appointment elsewhere for August 9th, but he told Grace Ray that he would break the appointment. On August 9th, after arriving at the Brock Cattle Company ranch, appellee sent the helper who had come with him back to appellee's ranch with one of appellee's bulls. Appellee then proceeded, alone on horseback, down a canyon to a gate on the Brock Cattle Company ranch where he met Charles Ray, Grace Ray and Bonnie Cook. Charles Ray, Grace Ray and Bonnie Cook were in a pickup truck towing a two-horse trailer with two horses in the trailer. They were on their way to some transient camp corrals where they planned to spray and brand cattle. Appellee had seen one of his cows and one of his calves in another corral. At the gate, Charles Ray made a remark about one of appellee's horses being on the Brock ranch and that appellee should get the horse out that day. Appellee said that he did not know anything about the horse; that he had broken engagements in order to come and get his cattle out; and that if Charles Ray would get the horse, or knew exactly where the horse was, appellee would come and get the horse. At that point Charles Ray appeared angry toward appellee and appellee said: "I don't want to argue any subject." Appellee's testimony as to what was said at this juncture continued:

"A. And I got on my horse and I said, 'I'll go down and get the cow and take

her out.' And he said, 'Well, we're gonna help you—

"Q. All right.

"A. —we're gonna help you.' And I said, 'In regard to that, you have quite a bit of work to do. I don't need the help. You have your cattle in the corrals at the transient camp corrals and you should go take care of them, but I don't need any help to take the cow and calf back.' And he says, 'But we're gonna help you, see that you get the cow back to the pasture.' "

This conversation between appellee and Charles Ray was within earshot of Grace Ray and Bonnie Cook. Appellee also testified that when he met Charles Ray, Grace Ray and Bonnie Cook at the gate, Charles Ray accused him of trespassing and said he should go back. Appellee replied:

"A. * * * Well, Mr. Ray, this is county road and I was called over here to remove my cow and I want to remove her."

At that point appellee, on horseback, and the other three, in the truck, proceeded to the corral where appellee had seen his cow and calf. Charles Ray let the cow and calf out of the corral and Grace Ray and Bonnie Cook got their horses out of the trailer. Then, appellee, Grace Ray and Bonnie Cook, all on horseback, began driving the cow and calf toward appellee's ranch, with Charles Ray bringing up the rear in the pickup truck. In the course of driving the cow and calf, appellee and Grace Ray began to argue about the rate at which the cow and calf should be driven. Appellee testified that two or three times he asked Grace Ray to slow down and that he said to Grace Ray:

"A. * * * Mrs. Ray, if you're in such a hurry, why don't you just go back and do your work up there on that, do your own work? · * * *"

He said Grace Ray made no response to this, but just kept on pushing the cow and calf too hard. Appellee testified that he asked Grace Ray again to slow down, but that she then became angry, turned her

horse and rode her horse into his. To avoid being knocked from his horse and perhaps trampled, appellee struck over his shoulder with his reins at the head of Grace Ray's horse. Appellee testified that when this happened, he said:

"A. * * * I can see why people, nobody wants to do business with you, with a wench like you."

Grace Ray then turned and rode about forty or fifty feet back to the pickup where Charles Ray was. Appellee, driving the cow and calf, rode on toward the gate near which the shooting took place. Charles Ray's testimony was that appellee all of a sudden whipped his horse, called Grace Ray a "goddamn wench and beat her on the head."

When appellee and Grace Ray arrived at the gate, Grace Ray began saying something to appellee about his having stolen some of her cattle. At that point Charles Ray drove up in the pickup. Appellee asked who would open the gate. Charles Ray ran about fifteen feet out in front of the pickup to a point about fifteen feet from appellee and pointed a rifle at appellee. Charles Ray asked appellee if he had called Grace Ray a name. Appellee replied that, if he had, he would not retract it. Charles Ray then said, "This is a wetback shooting you," and shot appellee. Appellee fell from his horse. Charles Ray then dragged appellee to the pickup, drove to a ranch house and telephoned for an ambulance.

There was evidence that Charles Ray customarily carried a rifle in his pickup and that Grace Ray knew that Charles Ray had a gun on the morning of the shooting.

■ ■ We believe there was sufficient evidence to show that Charles Ray was an agent, servant or employee of the Brock Cattle Company at the time of the shooting and that, therefore, the doctrine of respondeat superior can be applied to this case, considering that the other necessary facts for the application of that doctrine are present. The doctrine of respondeat superior is applicable during the period of time in which the principal has the right to control an agent's or servant's physical actions. Romero v. Shelton, 70 N.M. 425, 374 P.2d 301 (1962). See also, Gibson v. Helms, 72 N.M. 152, 381 P.2d 429 (1963).

■ Under the facts of this case, we have a principal-agent or employer-employee relationship and thus the question of whether Ray's actions were "fairly and naturally incident to the business" of the employment or agency was required to be submitted to the jury. To determine whether or not Charles Ray was a servant, agent or employee of the Brock Cattle Company, we consider whether his physical actions were subject to the control or the right to control of the principal-cattle company. See, Romero v. Shelton, supra. In Restatement (Second) of Agency § 220 (1957), comment (d), subsection (1), it is stated:

"* * * Although control or right to control the physical conduct of the person giving service is important and in many situations is determinative, the control or right to control needed to establish the relation of master and servant may be very attenuated. In some types of cases which involve persons customarily considered as servants, there may even be an understanding that the employer shall not exercise control. Thus, the full-time cook is regarded as a servant although it is understood that the employer will exercise no control over the cooking. * * *"

There is evidence that on the morning in question Charles Ray was the servant and co-manager of the corporation, performing services with the knowledge, consent and under the control, or right to control, of Grace Ray who was the president of the corporation. The fact that Charles Ray's services for the corporation may have been gratuitous does not change this. See, Flores v. Brown, 39 Cal.2d 622, 248 P.2d 922 (1952); Restatement (Second) of Agency § 225 (1957).

■ It is the law in this jurisdiction that an employer is liable for the intentional torts of his employee if the torts are committed in the course and scope of his em-

ployment. Gibson v. Helms, supra; Miera v. George, 55 N.M. 535, 237 P.2d 102 (1951); Childers v. Southern Pacific Company, 20 N.M. 366, 149 P. 307 (1915); Restatement (Second) of Agency, § 245 (1957); see also Annot., 34 A.L.R.2d 372 (1954).

■ Therefore, a jury question was presented on the issue of whether or not Mr. Ray's actions and conduct were within the scope of his employment, i. e., whether his actions were fairly and naturally incident to the business of the ranch. We have reviewed the voluminous record and hold that there was sufficient evidence to show that Charles Ray, in committing the tort in question, was acting within the scope of his employment.

Having determined that there was sufficient evidence to support the verdict against the Brock Cattle Company based upon the doctrine of respondeat superior, we now consider another of appellants' points, that the trial court erred in admitting evidence of Charles Ray's ownership of stock in the Brock Cattle Company and in admitting testimony on the internal financial arrangements of the Brock Cattle Company. Under this point appellants argue with regard to several specific matters which were admitted by the trial court.

The first has to do with Charles Ray's ownership of stock in the Brock Cattle Company. The deposition of Grace Ray was read into evidence by counsel for appellee. Therein Grace Ray stated that the owners of the Brock Cattle Company stock were Charles Ray, Grace Ray, the Rays' daughter Kathleen Ray Marley, and the company bookkeeper. It was objected to as "immaterial, incompetent and injects a false issue into the lawsuit."

The second of these matters has to do with the amount of Charles Ray's stock in the Brock Cattle Company. Grace Ray also stated that Charles Ray had, at the time the deposition was taken, 833 shares, Kathleen Marley had 1666 shares and Grace Ray had the rest, 5101 shares. This testimony was objected to on the same grounds as stated above. Charles Ray's deposition was

also read into evidence. Therein he stated that he had 833 shares. Appellants objected that this was immaterial, that it could only prejudice and inflame the jury, and that how much stock Charles Ray owned was not an issue in the case.

The third of these matters relates to the manner in which Charles Ray obtained his stock. Charles Ray's deposition, as read in the trial court, further indicated that Charles Ray had earned 833 of his shares by his labor; that 833 other shares were supposed to have been paid for by him, but that he did not do so and, therefore, his wife, Grace Ray, took the stock back. Appellants objected that this was "incompetent, and immaterial."

The fourth of these matters concerns Charles Ray's pledging of part of his stock in the Brock Cattle Company to his attorney. From Charles Ray's deposition, the information was brought out that Charles Ray had pledged stock to his attorney. The trial court sustained counsel's objection to the matter as being incompetent and immaterial and, upon motion to strike and to admonish the jury, the trial court struck the matter and advised the jury that it was not to pay any attention to the matter of the stock transfer.

The fifth of these matters relates to the following question asked of Charles Ray upon the taking of Charles Ray's deposition and read as part of the deposition at the trial:

"Q. * * * And the fact that you had shot Mr. McCauley on August 9th, 1965, had nothing to do with that transfer [of stock to Grace Ray]?

Before anything further was read from the deposition, appellants moved for a mistrial. The motion was denied. Appellants asked that the trial judge instruct the jury to disregard the question. The trial judge's response was as follows:

"I think the question was uncalled for. The comment the Court has to make is that if only a part of a deposition is

offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced and any party may introduce any other part. Go on to the next question, Mr. Sloan."

Appellants argue that, by means of the testimony referred to above, appellee took to the jury evidence that Charles Ray was a minor stockholder in the Brock Cattle Company; that his stock represented the extent of his wealth; and that this showed that Charles Ray was a poor man who was, by inference, unable to pay any substantial judgment. Consequently, appellants argue, this would prejudice the Brock Cattle Company. Appellants cite Washington Gaslight Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543 (1898); Kellenberger v. Widener, 159 So.2d 267 (Fla.Ct.App.1963), and Walker v. Kellar, 218 S.W. 792 (Tex.Civ. App.1920), and further argue that, although it may be that where punitive damages are sought evidence of financial standing is admissible, such evidence is not admissible where there are several defendants. Appellee, on the other hand, argues that the evidence challenged by appellants did not show Charles Ray's financial position, pointing out that the trial court sustained appellants' objections to questions which might have elicited the value of the Brock Cattle Company stock had the witness been allowed to answer. Appellee further argues that the challenged evidence was not offered to show Charles Ray's financial standing, but rather that it was offered: (1) to show the employment relationship between Charles Ray and the Brock Cattle Company, which relationship had to be shown in order for appellee to prevail under the respondeat superior theory; (2) to show that Charles Ray and Grace Ray were the alter ego of the corporation, i. e., that they were the corporation; and (3) to impeach the credibility of testimony that Charles Ray had retired from his position with the Brock Cattle Company. Also, appellee argues that appellants have waived any rights to appeal on the basis that the admission of the evidence was error where, as here, there are several defendants, since appellants neither pointed out such a reason at trial nor requested an instruction setting out the theory that the evidence of financial position could be considered against only Charles Ray. Appellee contends that evidence of financial position was admissible against Charles Ray, since the issue of punitive damages was before the jury.

While we do not think the evidence complained about was admissible under the majority rule to show worth in connection with claimed punitive damages, see Annot. 9 A.L.R.3d 692, and we question the propriety of the proof claimed to be objectionable, we are not convinced that the case should be reversed because of errors in receiving it. No questions were asked concerning defendant Ray's worth. The fact that he owned a minority interest in the defendant corporation does not establish his ability to pay a judgment. Neither does the fact that he had returned a certificate for 833 shares that he was buying because he had not paid for them establish worth or ability to pay. No punitive damages were awarded. We cannot say that this evidence in any manner affected the award of compensatory damages or the finding of corporate liability. Any error present in admitting the evidence is not considered as so prejudicial as to justify reversal. Compare Life & Cas. Ins. Co. of Tennessee v. Padgett, 241 Ark. 353, 407 S.W.2d 728 (1966). The real complaint is not that damages were awarded, but rather as to the liability of the corporation which we have answered above, and the amount which we discuss below.

As to the injection of the reasons for Ray's transferring his stock to his wife, and pledging the balance to his attorney, we believe the jury was not thereby so prejudiced, or its sympathy so enlisted, that the court's statements and admonitions did not effectively neutralize the same. Compare Villareal v. Billings, 35 N.M. 267, 294 P. 1111 (1930).

Appellants' last point on this appeal is that the verdict was excessive and that the verdict resulted from passion, prejudice and sympathy. We will not consider this point because it was not preserved for review. Appellants rely upon Transwestern Pipe Line Company v. Yandell, 69 N.M. 448, 367 P.2d 938 (1961), as allowing review of the question of an excessive verdict, even though in the lower court no motion for a new trial on the grounds that the verdict was excessive was made. However, we point out that in the Transwestern case, the appealing party did move in the lower court for a remittitur, thus, satisfying the rule that, with certain exceptions not here applicable, questions will not be considered by this court without having been first raised in the lower court. See Supreme Court Rule 20(1) (§ 21–2–1(20) (1), N.M.S.A., 1953 Comp.); Maryland Casualty Company v. Foster, 76 N.M. 310, 414 P.2d 672 (1966); Jackson v. Southwestern Public Service Company, supra; Griego v. Conwell, supra; Mitchell v. Allison, 54 N.M.56, 213 P.2d 231 (1949).

Accordingly, the judgment of the district court is affirmed.

It is so ordered.

MOISE and CARMODY, JJ., concur.