823 P.2d 940

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**CODY R., a Child, Defendant-Appellant.**

No. 12849.

Court of Appeals of New Mexico.

Nov. 8, 1991.

Certiorari Denied Dec. 12, 1991.

Sammy J. Quintana, Chief Public Defender, Hugh W. Dangler, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

The child appeals from an order committing him to the custody of the New Mexico Youth Authority following his plea of no contest to a charge of involuntary manslaughter. The single issue raised on appeal is whether the children's court abused its discretion in ordering the child's transfer to the custody of the Youth Authority for an indeterminate period not exceeding two years. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Haar*, 110 N.M. 517, 797 P.2d 306 (Ct.App.1990). We affirm.

## FACTS

The events culminating in the death of the victim arose out of a dispute between the child and the victim, a fellow high school student. The child had been engaged in an extended argument with the victim about alleged statements he had made concerning the child's girlfriend. The child warned the victim about spreading rumors and, at one point, the victim and the child met with the assistant principal and a school counselor in an attempt to resolve the problems. Shortly after that meeting, however, the child confronted the victim in a school hallway and began attacking him. At the dispositional hearing, the child admitted to striking and kicking the victim several times. According to some of the witnesses, the victim did not fight back, and the child continued to beat the victim after he had fallen to the floor. As a result of injuries received from the beating, the victim died.

The state charged the child with an open count of murder and moved to have the child transferred to district court for trial as an adult. The children's court denied the motion and found that the child was amenable to treatment and rehabilitation as a child through available facilities. Thereafter, an adjudicatory hearing was held at which the child agreed to the entry of a consent decree and entered a plea of no contest to involuntary manslaughter. The children's court ordered the child committed to the New Mexico Youth Diagnostic and Development Center (YDDC) for purposes of diagnosis, rehabilitation, and education. The court also ordered that a report be prepared by the YDDC indicating what disposition appeared to be most suitable for the best interests of both the child and the public.

At the dispositional hearing, the children's court heard testimony from various witnesses and had before it a number of reports and recommendations concerning dispositional alternatives. Dr. Daniel B. Matthews, a clinical psychologist, testified, outlining his findings and recommendations. He stated that he had worked with the court-appointed psychologist who had performed an evaluation of the child and that he had reviewed the report prepared by Dr. Art Brambila, a psychologist for Valencia Counseling Services. Dr. Matthews stated that he had found a remarkable accord among the conclusions reached by the various individuals who had examined the child, despite the fact that several different diagnostic findings had been made. Dr. Matthews expressed his belief that the child was in need of treatment, that the child was capable of accepting responsibility for his actions, and he recommended that the child receive outpatient treatment without incarceration. On cross-

examination, Dr. Matthews was asked about those portions of the YDDC report indicating that the child suffered from intermittent explosive personality disorder, that he had a potential for future violent acts, and that the prognosis for the child was poor. Dr. Matthews testified that he had found no symptoms of intermittent explosive disorder in the child, and that such diagnosis generally was reached only upon a showing of multiple incidents or incidents wherein the attacks were unprovoked.

Orlando R. Sais, the child's juvenile probation and parole officer, also recommended that the child be placed on probation and testified that he believed the child was amenable to treatment without being placed in the custody of the Youth Authority. The child testified at the dispositional hearing as well, expressing his remorse over the events leading to the victim's death.

After hearing closing arguments, the children's court ordered that the child be placed in the custody of the Youth Authority, noting that it might have considered probation as a dispositional alternative if the child had stopped the attack on the victim after he had knocked him to the floor. The court also stated that it could not overlook the fact that the child pursued the attack on the victim after he was defenseless, that the victim had died as a result of the beating, and that "even juveniles, especially one that's seventeen years old, [have] to face the consequences of [their] actions." Additionally, the court remarked that none of the reports indicated that the family of the victim had been contacted in order to determine the impact of the incident upon them.

DISCUSSION

The child contends that the children's court abused its discretion in failing to follow recommendations of the various counselling and probation authorities who urged that he not be incarcerated, and that, instead, he be treated on an outpatient basis. The child also asserts that the statements made by the court at the dispositional hearing indicate that in imposing sentence the court disregarded evidence presented at the hearing concerning his best interests and welfare.

In determining the appropriate disposition to be entered following the court's finding that the youth is a delinquent child, the children's court is vested with discretion concerning the weight and effect to be accorded the evidence and matters presented at the dispositional hearing. *See* NMSA 1978, § 32–1–34(E) (Repl.Pamp. 1989); *see also* NMSA 1978, § 32–1–31(E) (Repl.Pamp.1989). Determination of the final disposition to be imposed under the Children's Code following adjudication that a child has committed a delinquent act is vested in the sound discretion of the children's court under the provisions of the Code and the facts of each particular case. *See* § 32–1–34. *Cf. State v. Madrigal,* 85 N.M. 496, 513 P.2d 1278 (Ct.App.1973) (sentencing alternatives are within the discretion of the trial court). *See generally* ABA Juvenile Justice Standards Relating to Dispositional Procedures, Part VII, § 7.1 (1980). The court in *Madrigal* observed:

Judicial discretion is a discretion " * * * guided by law, caution, and prudence; it is an equitable determination of what is just and proper under the circumstances." *State v. Alaniz,* 55 N.M. 312, 232 P.2d 982 (1951). It is " * * * not a mere whim or caprice, but an honest attempt, in the exercise of power and duty, to see that justice is done. * * *" *Independent Etc. Co. v. N.M.C.R. Co.,* 25 N.M. 160, 178 P. 842 (1918).

*State v. Madrigal,* 85 N.M. at 501, 513 P.2d at 1283.

Section 32–1–31(G) states:

In that part of the hearings held under the Children's Code on dispositional issues, all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value even though not competent had it been offered during the part of the hearings on adjudicatory issues and the issue of need for care and rehabilitation.

The child argues that since this court has previously held that the children's court must consider uncontradicted evidence of amenability to treatment before transferring a juvenile offender to district court to be tried as an adult, a similar requirement should be recognized to exist concerning the final disposition to be imposed. *See State v. Doe*, 93 N.M. 481, 601 P.2d 451 (Ct.App.1979); NMSA 1978, § 32–1–30(A)(4) (Repl.Pamp.1989). We do not agree. It is true that Section 32–1–30(A)(4) has been interpreted as requiring the children's court to consider uncontradicted evidence of amenability to treatment or rehabilitation as a child prior to transferring the matter to the district court. *See State v. Doe*, 93 N.M. at 482, 601 P.2d at 452. In contrast, however, Section 32–1–31(G) evinces a legislative intent to permit the children's court to exercise its discretion concerning what disposition should be made for a child who has been adjudicated a delinquent. *See State v. Michael R.*, 107 N.M. 794, 765 P.2d 767 (Ct.App.1988).

The child also argues that the children's court must consider the recommendations regarding rehabilitation at sentencing as it must consider amenability to treatment at a transfer proceeding. Comparison of Sections 32–1–30(A)(4) (discretionary transfer), 32–1–31(G) (dispositional matters), and 32–1–34(E) (options for disposition of delinquent child) indicates that in adopting the Children's Code, our legislature imposed different criteria between transfer proceedings and dispositional decisions for delinquent children. The dispositional authority of the children's court is restricted to that which is conferred by the legislature under the Children's Code. *Cf. State v. Jennings*, 102 N.M. 89, 691 P.2d 882 (Ct.App.1984) (trial court's sentencing authority must be consistent with legislative authority). The child contends that the evidence was uncontradicted that he should not be committed to the Youth Authority and instead be placed on probation with outpatient treatment.

The only prerequisite to the determination that a child is delinquent is the finding that the child has committed a delinquent act. NMSA 1978, § 32–1–3(P) (Repl.Pamp.1989); *State v. Michael R.*, 107 N.M. at 795, 765 P.2d at 768. However, a finding of need for care and rehabilitation is a prerequisite to ordering that a child be placed in the custody of Youth Authority. § 32–1–31(E). The record indicates that the children's court properly entered its findings that the child had committed a delinquent act and that the child was in need of care and rehabilitation. The children's court's dispositional order will not be disturbed on appeal absent a showing of manifest abuse of discretion. *See In re Doe*, 88 N.M. 505, 542 P.2d 1195 (Ct.App. 1975).

In formulating its decision concerning the appropriate disposition to be imposed, the court must consider the best interests of the child, the child's family, and the public. *See* NMSA 1978, § 32–1–2(A)–(C) (Repl.Pamp.1989). The court should also consider "any other matters relevant to the need for treatment or [the] appropriate disposition of the case." NMSA 1978, § 32–1–32(A) (Repl.Pamp. 1989). This authority allows the court to consider the seriousness of the child's conduct.

In the instant case, the disposition of the children's court was supported by the record and was in accordance with the provisions of the Children's Code. Contained in the various recommendations submitted to the court were findings which supported its disposition. The YDDC report stated that the child did not perceive any wrongdoing regarding his behavior aside from the end result of the victim's death, and that the child had intermittent tendencies toward explosive behavior, the unpredictability of which posed a risk toward the personal safety and well-being of others. Additionally, the report stated that, without significantly altering his perceptions and attitude, the child's potential for future acts of violence is strong and his prognosis poor. Despite the existence of countervailing testimony, in light of the evidence detailed above, the dispositional order was consistent with the evidence and

the dispositional authority invested in the children's court. *See In re Doe.*

■ Nor do we agree with the child's contention that the children's court failed to consider the recommendations before it or to weigh the options specified in Section 32–1–34(E) prior to entering its dispositional order. The record reveals that the court received evidence favorable to the child from Dr. Matthews and from Mr. Sais, the child's juvenile probation and parole officer. *See State v. Doe,* 100 N.M. 649, 674 P.2d 1109 (1983) (the fact that the children's court heard evidence of the advantages and disadvantages of two alternatives was indicative that it had considered the matter within the provisions of the statute). The children's court also received and examined letters recommending leniency toward the child. The children's court even remarked that it might have considered probation but for the existence of certain facts. These factors indicate that the court evaluated and weighed the matters presented by both the child and the children's court attorney at the dispositional hearing.

■ Similarly, we are unpersuaded by the child's contention that the children's court in fashioning its dispositional order failed to consider the primary purposes of the Children's Code. Section 32–1–2(B) states that the Code shall be interpreted and construed to effectuate the following legislative purpose:

> [C]onsistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation * * *.

Another stated purpose of the Code is "to provide effective deterrents to acts of juvenile delinquency, including an emphasis on community-based alternatives[.]" § 32–1–2(F).

Considering these purposes, we find no abuse of discretion in the children's court's dispositional order. The court's remarks emphasized that in reaching its decision it had considered, among other things, the child's age, the manner in which the attack occurred, and the fact that the victim died. Given the circumstances under which the death occurred, the children's court could have reasonably determined that in view of the evidence and matters presented, transferring the custody of the child to the Youth Authority was consistent with the child's best interests, the interests of the child's family, and the interests of the public. § 32–1–2(A)–(C).

CONCLUSION

The disposition of the children's court is affirmed.

IT IS SO ORDERED.

BIVINS and PICKARD, JJ., concur.